## GEORGE G. LIGARE

*v.*

## THE CITY OF CHICAGO.

*Filed at Ottawa October 31, 1891.*

1. USE OF STREETS—*for railroad purposes—to the exclusion of any other use.* An ordinance of a city for the widening of a part of a street, which gives the use of all the old street and a part of the new street added by the widening, exclusively to steam railroad companies for laying and operating their tracks and for the filling up of a public water-way, is illegal and void, and can not form the basis for the condemnation of land for the purposes intended.

2. While city authorities may, under legislative authority, grant the use of a public street to a railway company for laying its tracks thereon and using the same by operating its cars and trains over the same, yet it is not competent for a city, under legislative authority merely authorizing tracks to be laid in streets, to grant the exclusive use of a street to a railroad company. It is not material that the public is not expressly deprived of the use of a street upon which railroad tracks are laid, but the result and effect of the grant will control in that regard.

3. SAME—*destroying, as a thoroughfare.* In permitting a street to be used for the laying of railroad tracks for the purpose of operating trains over the same, a city has no right to so obstruct the street as to deprive the public and adjacent property holders of its use as a highway. It is not competent for a city to authorize such use of a street as will destroy it as a thoroughfare for the public use.

4. SAME—*power of municipal corporations to open and improve.* Cities and towns are only empowered to lay out, open and improve streets for such public use as that persons and property within the municipality may be legitimately assessed or taxed for payment therefor, and persons and property within the same can not be legitimately assessed or taxed for the right of way or for making and improving a street for railway purposes, alone.

5. A city or village has no power to devote a street, which has been improved and maintained by municipal expense, to an exclusive use for which it has no authority to lay out, open or improve.

6. ORDINANCES—*two construed as one.* Where two ordinances for the widening of a part of a street are passed on the same day, and the last one expressly refers to and is by its terms dependent upon the adoption and enforcement of the first, and requires that the entire expense of enforcing both, and all damages which may be adjudged

against the city, shall be paid by certain railway companies in whose interest the ordinances are passed, they will be treated as two parts of a single and entire scheme, the same as if both were embodied in one ordinance.

7. EMINENT DOMAIN—*statute strictly construed.* Statutes conferring power to exercise the right of eminent domain are to be construed strictly. Unless both the letter and spirit of the statute relied upon clearly confer the claimed power, it can not be exercised. The person or corporation which the statute says may exercise the right for a stated purpose may exercise it for that purpose, but for none other; and no other person or corporation not thus authorized can exercise it for that purpose.

8. The right to exercise the power of eminent domain is in all cases limited by the purpose for which it shall be exercised. So private property may be condemned for public use, but it may be shown that the proposed use, in fact, is not public, but private.

9. SAME—*condemnation by a railroad company, for city, and by a city for railroad purposes.* A railroad company, under authority to condemn property for its right of way, can not condemn property for a street of a city; neither can a city, under authority to condemn property for streets, condemn property for a railroad track. In this respect a city will not be permitted to do indirectly what it may not do directly. The law looks to the substance rather than to the form. A city may not first condemn property for a street, and then afterward allow railroad tracks to be laid in it to the extent of excluding all other uses.

10. MUNICIPAL CORPORATION—*power to fill up navigable water-ways—streets over water-ways.* A city, under power to lay out, open and improve streets, may not condemn and fill up a navigable water-way appurtenant to lots, and thereby destroy passage over the same or render it useless. The right of the city to cross such water-way, and the right to navigate the same, are equal. Both are to be exercised and the rights of each are to be guarded.

11. Where a franchise is granted to construct ways on streets across a water-way, there is no implied right to destroy the water-way, but it must be so bridged that its use will not be unnecessarily impaired.

APPEAL from the Superior Court of Cook county; the Hon. JOHN P. ALTGELD, Judge, presiding.

This case was commenced by a petition of the city of Chicago for the widening of a street known as Archer avenue, whereby the city sought the condemnation of divers parcels of land, including lots 1, 2, 3 and 4, of block 10, in the South

Branch addition to Chicago, a subdivision of section 28, in township 39 north, range 14, east of the third principal meridian, in the city of Chicago, and made the owners of and persons interested in said land, defendants, including the appellant, George G. Ligare. A separate trial was awarded to him and had accordingly.

Appellant is the owner of said lots 1, 2, 3 and 4, and the only other alleged persons interested were the Joliet Stone Company and the Connecticut Mutual Life Insurance Company, both of which corporations were made defendants to the action. The insurance company was defaulted, and by a stipulation the interest of the Joliet Stone Company was withdrawn from the case, leaving the appellant and the appellee the only actual parties to the present controversy. The petition recites the following ordinance, adopted August 1, 1889:

"ORDINANCE FOR THE WIDENING OF ARCHER AVENUE.

"*Be it ordained by the council of the city of Chicago:*

"SECTION 1. That the portion of Archer avenue lying between a point on the south line of said avenue one hundred (100) feet east of the east line of Bushnell street and the easterly line of Sanger street, be and the same is hereby ordered widened, as follows, viz.: By taking or appropriating therefor the land on the south side of said avenue lying north of the following described line: beginning at the said point on the south line of Archer avenue about one hundred (100) feet east of the east line of Bushnell street, and running thence southwesterly on a curve to the right to the south-west corner of lot two (2), block nine (9), South Branch addition; thence west on a straight line to a point on the west line of Wallace street situated one hundred (100) feet south of the south line of Archer avenue; thence westerly on a curve to the right to a point on the east line of lot ten (10), in block eleven (11), in South Branch addition to Chicago, situated about fifty (50) feet south of the south line of Archer avenue; thence southerly

along the south-easterly line of said lot ten (10) to the north-erly line of McGregor street; thence westerly along the north-erly line of McGregor street to its intersection with Archer avenue.

"Sec. 2. Any legal proceedings necessary to accomplish the widening of Archer avenue, as aforesaid, are hereby author-ized, and the counsel to the corporation is hereby directed to file a petition in a court of competent jurisdiction in Cook county, Illinois, in the name of the city of Chicago, praying that 'the just compensation to be made for private property to be taken or damaged for said improvements or purpose speci-fied in this ordinance shall be ascertained by a jury,' and to file a supplemental petition, in accordance with the provisions of section 53 of article 9 of an act of the General Assembly of the State of Illinois entitled 'An act to provide for the incor-poration of cities and villages.'

"Sec. 3. The improvement hereby ordered shall be made, and the cost thereof paid for, by a special assessment to be levied upon the property benefited thereby, to the amount that the same may be legally assessed therefor, and the remainder of such cost to be paid by general taxation, in accordance with article 9 aforesaid.

"Sec. 4. This ordinance shall be in force from and after its passage."

The petition then shows that in widening Archer avenue it will be necessary to close, fill and shut up Ogden slip, so called, between blocks 9 and 10 in South Branch addition to Chicago, and the same is contemplated by said ordinance and the widening of said Archer avenue, as is provided therein. Then follows a description of the lots, pieces and parcels of land and property which will be taken or damaged, and the names of the respective owners and occupants thereof, and of parties having an interest therein, so far as known to the cor-poration counsel of the city of Chicago,—the officer filing this petition. All the premises described are more particularly

4—139 ILL.

shown and designated by a plat thereof filed with the petition
and made a part thereof. Said plat is reproduced, as follows :

The prayer of the petition is, that the property described, or so much as may be necessary, may be condemned for the improvement or purposes specified in the ordinance, and that just compensation to be made be ascertained by jury, as provided by law, and that such further or other proceedings may be had as to the court will seem meet and the nature of the case require.

Ligare demurred to the petition, but the court overruled the demurrer. Ligare then filed his cross-petition, in which he states:

"*First*—The petition for condemnation does not fully state the facts: (a) Taking lots 1 and 2 would largely impair and destroy the value of lots 3 and 4; (b) the four lots, although nominally separate and independent, in fact constitute one tract of ground, which can not be divided without seriously impairing the value thereof; (c) the actual value of all the lots depends largely upon Ogden slip as a water highway, and means of access thereto from the Chicago river and Lake Michigan, and the filling up of the slip would largely destroy the value of the lots; (d) the real purposes for which the city seeks to condemn are not set forth in the ordinance purporting to authorize the condemnation, but are contained in an ordinance a copy whereof is exhibited with the cross-petition, and in law the two ordinances are only two parts of one and the same scheme, and should be taken, read and construed together, and, so taken and construed, the same manifestly appear to be contrary to public policy, insufficient and void.

"*Second*—Cross-petitioner sets up special, unusual, extraordinary and peculiar damage: (a) The part of the lot not to be taken would be rendered worthless for the purposes of manufacturing, elevator, coal yards and the like; (b) the four lots now constitute the most valuable tract of land for such purposes in that part of the city, and when a purchaser can be found who has use for such property, would realize three times as much as could be obtained for the same number of square

feet of ground in detached parcels; (c) cross-petitioner bought the lots many years ago in anticipation of the increase in value he now foresees, and has for many years borne heavy losses in interest, taxes and assessments, and the fact that the railroad companies mentioned in the ordinance annexed to the cross-petition now have need of the ground, is one of the circumstances by which the value thereof should be determined.

"*Third*—The legislature of this State has not delegated to the city of Chicago any power or authority to vacate or fill up any canal or slip, but has withheld from said city all such power; and if the city should be allowed to fill up and destroy said Ogden slip, it would thereby work irreparable damage and injury to cross-petitioner, in violation of law, and would also violate the constitution and laws of the United States, by interfering with the navigable waters thereof, and deprive this cross-petitioner of his free right to use the same."

The prayer is that the court will protect all the rights and interests of cross-petitioner in said lots and slip, according to the constitution and laws of this State and those of the United States.

The following are the sections of the ordinance referred to and made part of the cross-petition, also adopted August 1, 1889, which are material to the questions involved in the present case:

"Sec. 5. Whereas, an ordinance has been introduced and is now pending in the city council for the widening of Archer avenue, between Bushnell street and Sanger street, by appropriating therefor the land on the south side of said avenue lying north of the following described line, to-wit: beginning at a point on the south line of Archer avenue, about one hundred (100) feet east of the east line of Bushnell street, and running thence south-westerly on a curve to the right to the south-west corner of lot two (2), block nine (9), South Branch addition; thence west on a straight line to a point on the west line of Wallace street situated one hundred (100) feet south of

the south line of Archer avenue; thence westerly on a curve to the right to a point on the east line of lot ten (10), block eleven (11), in South Branch addition to Chicago, situated about fifty (50) feet south of the south line of Archer avenue; thence southerly along the south-easterly line of said lot ten (10) to the northerly line of McGregor street; thence westerly along the northerly line of McGregor street to its intersection with Archer avenue. Now, in case said ordinance shall go into effect and said avenue is widened, permission and authority are hereby granted to the Chicago, Madison and Northern Railroad Company, its lessees, successors and assigns, to lay down, maintain and operate four railroad tracks, and to the Chicago and Alton Railroad Company, its lessees, successors and assigns, to lay down, maintain and operate two railroad tracks on that portion of Archer avenue, when widened as aforesaid, lying between the two following lines, to-wit: one line north of and nearly parallel to and seventy (70) feet distant from the south line of widened Archer avenue, as said line is above described, the other line north of and nearly parallel to the said described line, and one hundred and sixty (160) feet distant therefrom. The permission and authority granted in this section are upon the condition, however, that no steam railroad track shall be laid down or maintained on said Archer avenue, between Bushnell street and Sanger street, except between the two lines last above described, and upon the further condition that the cost and expense of procuring the land necessary for the widening of Archer avenue, as aforesaid, and all damages occasioned thereby, and the cost of grading and paving the same, and also so much of the said street adjoining it on the north as shall be occupied by the tracks of the Chicago, Madison and Northern Railroad Company and the tracks of the Chicago and Alton Railroad Company, shall be paid for by the Chicago, Madison and Northern Railroad Company, and a special assessment for the aforesaid cost and expense may be levied solely on the property of said railroad

company; and the said Chicago, Madison and Northern Railroad Company shall build, at its own expense, in conformity to plans to be approved by the commissioner of public works, along the south side of its roadway, the entire length of Archer avenue which it shall traverse, a substantial brick or stone wall twelve (12) feet in height, with stone coping, which said company shall keep in good condition and repair, and shall also construct a sidewalk along the south side of said wall whenever the same shall be ordered by the municipal authorities of said city.

"Sec. 6. The rights and privileges hereby granted to the several railroad companies herein named in Archer avenue are subject to the rights and privileges therein of the Chicago City Railroad Company, and permission and authority are hereby granted, upon the completion of the widening of Archer avenue, as aforesaid, to the said Chicago City Railroad Company, if it elects so to do, to remove their tracks from their present location in that portion of Archer avenue so to be widened, and to relay them upon the south seventy (70) feet of Archer avenue as widened: *Provided, however,* that said removal shall not be made until a permit therefor shall be obtained and the proposed location of said tracks on said seventy (70) feet has been approved by the commissioner of public works, and said tracks shall be relaid subject to the approval of the said commissioner. Such removal shall be a waiver and abandonment of the rights of said Chicago City Railway Company as to the portion of Archer avenue from which said tracks are removed.

"Sec. 7. All that portion of Ogden slip lying south of the north line of Archer avenue, as the same shall be widened as recited in section 5, shall be permanently filled with earth, and the cost of the said improvement shall be paid by the Chicago, Madison and Northern Railroad Company: *Provided,* that the order of the city council, passed September 17, 1888, be and the same is hereby repealed, and the right of the Consumers'

Gas Company to operate and maintain the switch tracks on the south side of Archer avenue across Butler street, also across Twenty-fourth Place, and the alley between Twenty-fourth Place and Twenty-fifth street, is hereby confirmed : *Provided,* that the said Consumers' Gas Company shall consent to the closing and filling of said Ogden slip, and release all claim to damages on account thereof : *Provided, further,* that said Chicago, Madison and Northern Railroad Company shall pay the city of Chicago for any sewers, drains or pipes it may at any time place and construct on said premises now known as Ogden slip, and all the cost and expense of laying the same.

"Sec. 8. Permission and authority are hereby granted to the Chicago and Alton Railroad Company, its successors and assigns, to lay down, maintain and operate two main railroad tracks, with necessary switches, on ground to be acquired for the purpose, lying north of and adjacent or near to that portion of the said Chicago, Madison and Northern railroad, as herein located, which lies between the intersection of Grove street with Archer avenue and a point on Stewart avenue between Grove street and the south branch of the Chicago river, at which last named point the said two main tracks may be connected with tracks of the said Chicago and Alton Railroad Company now laid in Stewart avenue, and to cross for that purpose all intervening streets and alleys.

"Sec. 9. Permission and authority are also hereby granted to the Chicago and Alton Railroad Company, its successors and assigns, to re-locate its tracks between the east side of Joseph street and the east side of Waver street, and to lay down, maintain and use between the street lines last mentioned, on grounds now owned by it and on grounds to be hereafter acquired for that purpose, lying north of and adjacent to the Chicago, Madison and Northern railroad, as herein located, four main tracks, with necessary side-tracks, turnouts and switches, and to cross for the purpose all intervening streets and alleys : *Provided,* that no track shall be laid across

either of such streets or alleys north of the present location of the northerly track of the said Chicago and Alton Railroad Company now laid over and across the same. When the tracks authorized in sections 8 and 9 of this ordinance cross any street or alley, said Chicago and Alton Railroad Company shall keep the space between the tracks planked or paved, and when said tracks cross any sidewalk, the said company shall keep the sidewalk in the spaces between the tracks in good repair. All the provisions of this ordinance limiting the rights and fixing the obligations of the Chicago, Madison and Northern railroad shall be equally applicable to the Chicago and Alton railroad, except those provisions relating to building the viaduct and approaches, the wall in Archer avenue, constructing telegraph communication and filling the Ogden slip.

"Sec. 10. The rights herein granted are upon the express condition that the said Chicago, Madison and Northern Railroad Company shall pay to the city of Chicago the entire cost and expense of a viaduct over Halsted street, and approaches thereto, said viaduct and approaches to be the width of the streets, to be constructed in accordance with plans to be approved by the mayor and commissioner of public works. The north approach of said viaduct shall begin in Halsted street, at or near the south branch of Chicago river, and on the south side thereof, and said approach and viaduct shall be constructed south along Halsted street to Archer avenue, and beyond, with approaches in Archer avenue, making as little interference with the present grade of Archer avenue in crossing as shall be found practicable. It is ordered that said viaduct shall be commenced within two years after the acceptance of this ordinance, and any legal proceedings necessary, by way of condemnation or otherwise, are hereby ordered to be taken. The said company shall and hereby agrees to pay all costs and expenses of such proceedings. The said Chicago, Madison and Northern Railroad Company shall and hereby further agrees to pay to the city of Chicago the cost and ex-

pense of the construction and maintenance of a viaduct and approaches on Halsted street and Archer avenue, as aforesaid, in accordance with plans to be approved by the mayor and commissioner of public works, and the said company shall pay all damages to lots, lands and buildings, and any title to or interest therein, or to the occupancy or possession thereof, which may be recovered or obtained against the city of Chicago in consequence of the construction of said viaduct and approaches, and shall also pay all damages that shall accrue to property owners fronting on streets whereon such viaduct or approaches may be erected by reason of the construction of said viaduct and approaches : *Provided, however,* that the south approaches on Archer avenue and Halsted street shall be constructed so that the grade of said approaches, from the commencement thereof to the highest point of said approaches in Archer avenue, shall be one foot of rise in each forty lineal feet, and from the north line of Archer avenue to the south end of said viaduct the rise per foot shall be one foot in every thirty-two lineal feet.

"Sec. 11. Before exercising any of the rights hereby granted, the Chicago, Madison and Northern Railroad Company shall execute to the city of Chicago a bond, in the penal sum of one hundred thousand dollars ($100,000), to be approved by the mayor and comptroller, conditioned that said company shall and will observe and perform all the provisions of this ordinance, and shall and will forever indemnify and save harmless said city of Chicago against and from any and all damages, judgments, decrees, costs and expenses of the same which said city may suffer, or which may be recovered or obtained against said city for or by reason of, or growing out of or resulting from, the passage of this ordinance, or from any act or acts of the said company under or by virtue of the privileges of this ordinance : *Provided, however,* that the said bond shall not be construed to limit the liability of said company to one hundred thousand dollars ($100,000), but the said

company shall be liable to the full extent of every liability imposed by this section, notwithstanding the amount thereof may exceed one hundred thousand dollars ($100,000): *And it is hereby further provided*, that upon the recovery of any final judgment or judgments against the said city, as aforesaid, the said company shall immediately, and without prior payment of such judgment or judgments by said city, be liable to pay, and shall pay, the amount or amounts thereof to the said city, and the fact that the said city may not have paid such judgment or judgments shall constitute no defense on the part of said company."

On hearing, the jury returned the following verdict:

"We, the jury, find the just compensation to be awarded to the owner of and parties interested in the property to be taken, as described in the petition, to be $25,000, and we find that the property not taken and described in the cross-petition will be damaged $10,000, and we find the fair cash market value of the thirty-five feet in slip adjoining said property, not taken, to be $5000, and we fix the damage to the property not taken at $5000.

| | |
|---|---:|
| Value of property taken, | $25,000 |
| Damage to property not taken, | 10,000 |
| Total, | $35,000 |
| Credit, fair cash market value 35 feet, | 5,000 |
| | $30,000" |

Motion for new trial was made and overruled, and the court gave judgment upon the verdict of the jury, and among other things "that the owners and parties interested do recover for their full compensation for the damage which they will sustain and the injury which will be done to said lots 3 and 4, from the taking, appropriating and using, for the purposes named in said petition and ordinances, said lots 1 and 2, and the filling of said Ogden slip," etc. Appellant then moved in arrest of judgment, but the court overruled the motion.

Mr. C. C. BONNEY, and Mr. R. S. THOMPSON, for the appellant:

The questions arising are, whether the use proposed is a public purpose, and whether the same will justify the exercise of the compulsory power of condemnation. *Railroad Co.* v. *Wiltse*, 116 Ill. 454; *Sholl* v. *Coal Co.* 118 id. 427.

This petition is filed to accomplish two separate, distinct and independent objects,—the widening of the avenue and the filling of Ogden slip. This is contrary to law. *Wickler* v. *Chicago*, 61 Ill. 142.

The city has no power to condemn land for railroad purposes. Eminent Domain act, sec. 11; City Charter, art. 5, sec. 1; art. 9, secs. 1-3; *East St. Louis* v. *St. John*, 47 Ill. 463; *Hyde Park* v. *Spencer*, 118 id. 446.

The compound ordinance is unreasonable and contrary to public policy. 1 Dillon on Mun. Corp. secs. 319-322, 327, 329; *Tugman* v. *Chicago*, 78 Ill. 405; *Chicago* v. *Rumpff*, 45 id. 90; *Tool Co.* v. *Norris*, 2 Wall. 45.

Mr. ELBERT H. GARY, for the appellee:

The legislature may itself declare specifically the property to be taken for a public use, or it may confer the power on the person or corporation in which the title is to be vested. Pierce on Railroads, 146-150; Mills on Eminent Domain, sec. 11; Lewis on Eminent Domain, sec. 162; *Railroad Co.* v. *Smith*, 62 Ill. 275; *Railroad Co.* v. *Wiltse*, 116 id. 454; *Smith* v. *Railroad Co.* 105 id. 511; *Mills* v. *St. Clair County*, 2 Gilm. 197; *Sangamon County* v. *Brown*, 13 Ill. 207; *Curry* v. *Mt. Sterling*, 15 id. 320; *Dunlap* v. *Mt. Sterling*, 14 id. 251; *Dunham* v. *Hyde Park*, 75 id. 371; *Railroad Co.* v. *Lake*, 71 id. 336; *Hyde Park* v. *Cemetery Ass.* 119 id. 149.

The legislature determines the sufficiency of the number of people to be benefited, in order to constitute the use a public one. Mills on Eminent Domain, 13; *Talbot* v. *Hudson*, 16 Gray, 417; *O'Reilly* v. *Drainage Co.* 32 Ind. 169; Pierce on Railroads, 143; Lewis on Eminent Domain, sec. 159.

All grants made by the State are subject to the right of eminent domain. *Illinois and Michigan Canal* v. *Railroad Co.* 14 Ill. 314; *Mills* v. *St. Clair County*, 2 Gilm. 197.

As to the power of the city to fill and destroy the waterway, see *Railroad Co.* v. *Winslow*, 66 Ill. 219; *Railroad Co.* v. *Switzer*, 117 id. 399; *Kiernan* v. *Railway Co.* 123 id. 192; *Railroad Co.* v. *Moore*, 124 id. 334.

An obstruction of a stream or water-course is a subject of compensation. Mills on Eminent Domain, sec. 189; *Chapman* v. *Railroad Co.* 33 Wis. 629; *Delaplaine* v. *Railroad Co.* 42 id. 214; *Diedrich* v. *Railroad Co.* id. 248; *Langdon* v. *City*, 93 N. Y. 129; *Meyers* v. *City*, 82 Mo. 367; *Shirley* v. *Bishop*, 67 Cal. 543.

The city may lawfully grant the right to lay and operate railway tracks in a street. *Murphy* v. *City*, 29 Ill. 286; *Railroad Co.* v. *Hartley*, 67 id. 443; *Quincy* v. *Railroad Co.* 92 id. 21; *Railroad Co.* v. *People*, id. 170; *City* v. *Wharf*, 115 id. 523; Pierce on Railroads, 234.

The city holds the streets in trust for the whole of the public. *Dry Dock Co.* v. *Garrity*, 115 Ill. 155.

Courts will not, in general, inquire into the motives of members of the city council in passing ordinances. 1 Dillon on Mun. Corp. sec. 248; *Freeport* v. *Marks*, 59 Pa. St. 253; *Buell* v. *Ball*, 20 Iowa, 282.

The location of a railroad in a public street is no less wise, just and lawful because the railroad company consents to pay the cost of the public improvement made necessary by such location. *Parks* v. *Boston*, 8 Pick. 218; *Copeland* v. *Packard*, 16 id. 217; *Crochett* v. *Boston*, 5 Cush. 182; 2 Dillon on Mun. Corp. sec. 461.

The entire damages of a way for the peculiar benefit of the applicant may be assessed against him. *Harrington* v. *Harrington*, 1 Metc. 404; *Dunham* v. *Bristol*, 108 Mass. 202; *Hays* v. *Risher*, 32 Pa. 169.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

It is to our minds clear that both ordinances before us in this case are but parts of a single and entire scheme. They were adopted on the same day, and the latter expressly refers to, and is by its terms dependent upon, the adoption and enforcement of the former, and it requires that the entire cost and expense of enforcing both ordinances, and all damages which may be adjudged against the city by reason of their being adopted and enforced, shall be paid by the railroad companies. Moreover, the attempt to widen Archer avenue for the limited distance and in the peculiar manner described in the first ordinance is manifestly to meet a local want in that respect, and the second ordinance conclusively shows that that local want is space for laying down additional railroad tracks, and nothing else. It is also of some significance, as confirmatory of this view, that the petition for condemnation alleges that the first ordinance contemplates the closing and filling up of Ogden slip, and that can only be upon the assumption that the second ordinance is supplemental to the first, for Ogden slip is not mentioned or referred to, directly or indirectly, in the first ordinance. The case must, then, be treated precisely the same as if both ordinances had been embodied in one, and we shall therefore treat them as a single ordinance for widening a street in the manner proposed, and, at the same time, giving the use of all the old street, at the place where the street is widened, and a part of the new street added by the widening, exclusively to certain railroad companies for laying and operating their tracks, and also for closing and filling up a public water-way.

Archer avenue is sixty feet wide. One steam railroad track is now laid on it, and operated by the Chicago and Alton Railroad Company. The ordinance adds, at the point under consideration, one hundred feet to the street, and takes thirty feet of that and adds it to the sixty feet, making ninety feet, and

upon this authorizes the Chicago and Alton Railroad Company to lay and operate two additional tracks, and the Chicago, Madison and Northern Railroad Company to lay and operate four tracks,—making in all seven tracks to be laid and operated by steam engines within this ninety feet, or one track for every twelve and six-sevenths feet, and then requires that the part thus to be used shall be cut off from the remaining seventy feet of the street to be added, by a stone or brick wall twelve feet in height. The space to be occupied by the railroad tracks has also a line for street cars operated within it, but permission is given to remove that to the seventy feet south of the wall.

We shall take no time to demonstrate that the sixty feet of old street and the thirty feet of new street thus to be occupied by seven steam railroad tracks are exclusively devoted by the ordinance to the use of railroad companies. Hemmed in by the wall on the one side and by the buildings or enclosures on private property on the other, no rational being would, at the risk of the inevitable dangers from passing engines and cars, use this part of the street as a common highway, unless under stress of most extraordinary circumstances. It is not material that the public are not, by the words of the ordinance, forbidden the use of this part of the street,—the effect of the grant is inevitably an exclusion of all but these railroads from its use, and the law deals with results, and not with mere forms, in such matters.

Undoubtedly, it has been held in many cases in this court that it is a legitimate use of a street to allow a steam railroad track to be laid and operated upon it, when there is legislative authority therefor, but it has never been held that, under legislative authority merely authorizing tracks to be laid in streets, it is competent for a municipality to grant the exclusive use of a street to a railroad company. The leading case on this question is *Moses* v. *P. F. and C. R. R. Co.* 21 Ill. 516. It was there sought to enjoin the laying of a railroad track in,

a street, and it was held that it was admissible for a common council, invested with legislative authority to that end, to authorize a railroad track to be laid in the street, because streets. are for no exclusive mode of passage of persons and property, and therefore all modes may be tolerated. The gist of the reasoning is in the following sentence from the opinion of the court: "A street is made for the passage of persons and property, and the law can not define what exclusive means of transportation and passage shall be used." In *Stack* v. *City of East St. Louis*, 85 Ill. 377, action was brought against the city for permitting a railroad company to obstruct a street by a necessary embankment made for its tracks in approaching a bridge, and the action was maintained upon the ground, in part, that a railroad company can not be allowed to exclude other uses of the street, and it was, among other things, said in the opinion: "It has, however, been held that a city or village may authorize the laying of railroad tracks in their streets,—that such a use is not inconsistent with the trust for which they are held by the city. But in thus permitting them to be used, the city has no right to so obstruct the streets as to deprive the public and adjacent property holders of their use as streets. The primary object is for ordinary passage and travel, and the public and individuals can not be rightfully deprived of such use." To like effect, also, is *C. D. and C. Co.* v. *Garrity*, 115 Ill. 155, and *Olney* v. *Wharf*, id. 523. And so it has been held in Missouri, it is not competent for a city to authorize such use of a street, dedicated as a street, as . will destroy it as a thoroughfare for the public. *Dubash* v. *H. and St. J. R. R. Co.* 89 Mo. 86. See, also, *L. C. Ry. Co.* v. *City of Louisville*, 8 Bush, 415.

It is so familiar that we need not stop to demonstrate it, that cities, villages and towns are only empowered to lay out, open and improve streets for such public use as that persons and property within the municipality may be legitimately assessed or taxed for payment therefor, and that persons and

property within a municipality can not be legitimately assessed or taxed for the right of way, or the making or improving of a road, for a railroad company alone. This being conceded, authority will in vain be sought for a municipality to devote a street which has been improved and maintained by municipal expense, to an exclusive use for which it has no authority to lay out, open or improve it. We do not deny that the city has power to widen streets, generally, and that when it has undertaken to do so the motives that may have actuated those in authority are not the subject of judicial investigation; but the purpose for which a thing is done is very different from the motives which may have actuated those by whom it is done, and is, in the present instance, a legitimate subject of judicial investigation, for the right to exercise the power of eminent domain is in all cases limited by the *purpose* for which it shall be exercised,—as thus, private property may be condemned for public use, but it may be shown that the use in fact is not public, but private. *Railroad Co.* v. *Wiltse,* 116 Ill. 454; *Sholl* v. *Coal Co.* 118 id. 427.

Statutes conferring power to exercise the right of eminent domain are to be construed strictly. Unless both the letter and spirit of the statute relied upon clearly confer the claimed power, it can not be exercised. (*City of East St. Louis* v. *St. John,* 47 Ill. 463; *Railroad Co.* v. *Wiltse,* and *Sholl* v. *Coal Co. supra.*) It is not a question whether the person or corporation seeking to exercise it might not do so with as great safety to persons and property as any other person or corporation, or whether it would work out an equitable result to allow a particular person or corporation to exercise it in a given case. The question is purely one of legal power. That person or corporation which the statute says may exercise it for a stated purpose may exercise it for that purpose, but for no other purpose, and no other person or corporation not thus authorized can exercise it for that purpose. And so we held in *C. and N. W. Ry. Co.* v. *Galt,* 133 Ill. 657, that a railroad

company, under authority to condemn property for its right of way, can not condemn property for a street of a city; and, obviously, if this be true the reverse must also be true,—a city can not, under authority to condemn property for streets, condemn property for a railroad track, for the principle must be the same.

But may the city here do indirectly, by mere change in the form, that which it can not do directly? Although the city may not condemn property for the use of the railroad company, yet inasmuch as it may allow railroad tracks to be laid in its streets, may it not first condemn property for itself and then afterwards allow the railroad tracks to be laid upon it to the extent of excluding all other uses? But we have seen that under the power merely to authorize railroad tracks to be laid on streets, a city has no right to authorize railroad tracks to be laid upon streets so as to exclude the other public uses of the street so long as it shall remain a public street, and here it is shown that the condemnation is for the express purpose of enabling the city to give an exclusive use of a part of the old street, and thirty feet of additional space, to the exclusive use and occupation of railroad companies. The substance is not to be lost sight of through any mere jugglery in the use of words. This proceeding is, in fact, not for the city, but for the railroad companies. Between condemning for the railroad companies and condemning for the city to then give to the railroad companies, there is, in legal effect, and so far as concerns this case, no difference,—they are precisely the same thing.

We also fail to find any authority in the law to condemn and fill up Ogden slip. The evidence is much less satisfactory as to what this slip is than it should have been. There is enough, however, to show that it is a navigable water-way, connected with the south branch of Chicago river, and appurtenant to appellant's lots. A map in evidence shows its location, and it was spoken of by witnesses, without objection, as appurtenant to these lots, and as a water-way. Thus, George

5—139 ILL.

M. Bogue said he had examined appellant's lots fronting on Ogden slip; considered it as having a dock frontage. Edward Campbell said that he was familiar with Ogden slip. "Travel has been obstructed by vessels heavily laden getting stuck there in the slip; mostly in the summer time; vessels laden with coal. The slip was used but little last summer, mostly by canal boats for the stone yard. Larger vessels have not used the slip lately." Edward C. Huling said that appellant's property had a water front, and could receive from ships. "The closing up the slip,"—i. e., Ogden slip,—"would shut off all water front." There are other references in the testimony of the witnesses of like character, but these we think sufficient.

The right of navigation and the right of crossing the water-way are equal. Both are to be exercised, and the rights of each are to be guarded. (Ill. P. Co. v. P. B. Ass. 38 Ill. 467.) When a franchise is granted to construct ways or streets across a water-way, there is no implied right to destroy the water-way, but it must be so bridged that its use will not be unnecessarily impaired. (Elliott on Roads and Streets, 32, et seq.) If it be conceded that the State may authorize the taking or destruction of a water-way, it devolves on those who claim that the State has done so, to show it, and since that is not done by simply showing power to lay out, open and improve streets across water-ways, no such power is here shown. Power is given the city by the 31st clause of section 1, article 5, chapter 24, of the Revised Statutes of 1874, page 218, "to construct and keep in repair canals and slips for the accommodation of commerce," but we have found no power granted to the city to close them and fill them up.

We think, construing, as we do, the two ordinances as one, the condemnation adjudged is for a purpose unauthorized by law, and the court erred in admitting the ordinances in evidence, and in rendering judgment as it did.

The judgment is reversed.      *Judgment reversed.*

Craig and Bailey, JJ., dissenting.