GEORGE G. LIGARE

*v.*

THE CHICAGO, MADISON AND NORTHERN RAILWAY CO.

*Filed at Ottawa March 28, 1896.*

1. EMINENT DOMAIN—*reversal of judgment of condemnation without remanding—powers of lower court.* Upon reversal of a judgment of condemnation without remanding, for the reason that no right of condemnation existed, the lower court has no power to make any further order in the case, but may compel a return by its clerk of a certificate evidencing a deposit, made to secure payment of the award, to the proper owner or custodian, where the right to possession has not been interfered with by any supplementary proceeding.

2. SAME—*deposit cannot be held to satisfy damages where proceeding is void.* A deposit, made under the statute, to secure the payment of the award which may be made in condemnation, cannot be reached, where the proceeding is void because no right of condemnation exists, for the payment of damages to the land by the temporary entry thereon, pending the proceedings, for the purposes for which the land was sought to be condemned, but the only remedy is an action for trespass.

3. SAME—*withdrawal of deposit—condemnation not a proceeding in equity.* Withdrawal of funds deposited under a void order in condemnation proceedings cannot be prevented upon equitable grounds, as such proceeding is not equitable in its character.

MAGRUDER, J., dissenting.

*Ligare v. C., M. & N. Ry. Co.* 50 Ill. App. 84, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

C. C. BONNEY, and LYMAN M. PAINE, for appellant.

ELBERT H. GARY, for appellee.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

This was a petition by the Chicago, Madison and Northern Railway Company, in the Superior Court of Cook county, for an order requiring the clerk of that court

to return to the Merchants' Loan and Trust Company a
certificate of deposit of $35,000 by it placed and deposited
with said clerk on behalf of the petitioner, pursuant to
an order theretofore entered in a certain condemnation
proceeding by the city of Chicago against George G. Li-
gare, appellant here.   The condemnation case was taken
by Ligare to this court on appeal, where the judgment of
the court below was reversed without a remandment of
the case, on the ground that the ordinance of the city pro-
viding for the laying out of the street, etc., was *ultra vires*
and a condemnation proceeding unauthorized and unlaw-
ful.  (*Ligare* v. *City of Chicago*, 139 Ill. 46.)  In the condem-
nation proceeding the compensation to be awarded to
the land owner, Ligare, for property taken and damaged
was ascertained, and the city of Chicago, notwithstand-
ing the appeal of Ligare from the judgment in that
case, desiring to enter upon and take possession of the
land condemned, the appellee, the Chicago, Madison and
Northern Railway Company, being interested in such con-
demnation by and under the ordinance of the city, was
required by the judgment and order of the Superior Court,
in which such condemnation proceedings were had, to
deposit, for the use of the parties entitled thereto, the
sum of $35,000 with the Merchants' Loan and Trust Com-
pany, which was done, and thereupon said loan and trust
company gave to the clerk of said court a certificate of
such deposit.   Appellant was notified of the petition to
have said certificate of deposit returned to the loan and
trust company for the benefit of appellee, waived service
of process, and moved to strike the petition from the files
because filed without leave.   This motion was overruled,
and appellant excepted to the ruling.   Appellant then
moved to dismiss the petition, assigning various reasons
therefor.   This motion was also overruled by the court,
and appellant excepted.   Protesting that the petition
should be dismissed, appellant next demurred specially to
the petition, assigning numerous causes of demurrer.   The

demurrer was overruled, and appellant likewise saved his exception, and, electing to stand by his demurrer, the court proceeded to hear evidence, and ordered a return of the $35,000 certificate of deposit to the Merchants' Loan and Trust Company, and payment by it to appellee, as prayed in the petition. To reverse this order Ligare appealed to the Appellate Court, where the order was confirmed, and he brings the case to this court by his further appeal.

The deposit of the $35,000 was in strict compliance with the judgment of the Superior Court in the condemnation proceeding, and was for the purpose of securing payment of the compensation therein awarded to appellant, and for no other purpose. The land owner having appealed from the judgment of the court awarding him compensation, appellee could, by virtue of the Statute of Eminent Domain, (Rev. Stat. secs. 13, 14, chap. 47,) enter upon the premises condemned, by complying with its provisions. It will, in the view we take of the case, be unnecessary to determine whether the deposit with the Merchants' Loan and Trust Company, although in compliance with the order of the court, would give such right to enter or not, for the reason that upon the final determination of the cause no compensation whatever is awarded to appellant, and the deposit, under the statute, standing simply as security for payment of the compensation to be made to the land owner for his land taken or damaged, he would only be entitled to the amount of compensation awarded in that proceeding. The effect of the reversal of the judgment in the original condemnation proceeding was, practically, to put the parties in the same condition as though no such proceedings had been instituted. Upon the reversal of the judgment of condemnation and the refusal of this court to remand the cause for the reason that no right of condemnation existed, the power of the Superior Court over the matter was exhausted. The proceedings in condemnation are purely

statutory, and the deposit having been made under a void order the money remained that of the depositor. The court was without power to make any further or additional order in that case. But an officer of that court being in possession of the certificate evidencing the deposit, the court would have power over its officer to compel a return of it to the proper owner or custodian, the right to the possession of it not having been interfered with by any supplementary proceeding.

It is, however, insisted, that under the order of the court, and in pursuance of the statute before referred to, the city of Chicago was authorized to, and did in fact, enter upon the land of appellant, and that there was, therefore, a taking and actual damaging of appellant's land. It is highly probable that there should be legislation protecting the land owner in cases of this sort. It is undoubtedly true that the owner of land may suffer great damage where his land is thus entered upon, under a form of law, without any adequate fund having been provided for payment of such damages to his private property. The use is a public one, and the proceedings are at least under the forms of the law, and the judgment apparently valid and conclusive. But if, in such cases, the proceeding is void,—if no right of condemnation exists in the State, municipality or public corporation authorized by law to condemn private property for the public use,—there is no provision by which the land owner can be protected against the temporary taking and damaging of his property pending the appeal authorized by the statute. The statute provides, if an appeal be taken by the land owner, that upon compliance with its provisions the land may nevertheless be entered upon pending the appeal. The deposit of the money awarded as compensation, and the bond required to be filed by the authority condemning, stand as security for the compensation that may finally be awarded to the land owner for his property taken and damaged; and in all ordinary pro-

ceedings it is apparent that ample provision is made, by the deposit of the compensation awarded (which the land owner may, at any time pending the appeal, take,) and by the bond required to be filed, for payment of the just compensation which has or may be awarded. If this were not so the statute would be in conflict with the constitution, and therefore it would be held that the right of entry upon the land and damaging it, pending the appeal, did not exist.

It is the well settled doctrine that compensation must be ascertained and paid before entry upon the land or damaging it for the proposed public use, or a fund must be provided to which the land owner may apply for payment. (*Penn Mutual Life Ins. Co.* v. *Heiss*, 141 Ill. 35, and cases cited.) If the authority exists to require condemnation to be made, it is apparent that the statute provides an adequate fund, that may be reached by the owner through the ordinary medium of courts of justice, and the payment is made certain. It is said in the case cited (p. 57): "It has been uniformly held in this country that the compensation need not be paid before the taking. It is sufficient that provision be made for compensation afterwards, provided the payment be made certain." But it must be apparent, we think, that this can have no application where there is no authority of law for condemning the property of the citizen. It was held in the *Ligare case, supra*, that the proceedings were absolutely void from the beginning. That being so, the proceeding conferred no authority upon the city, its officers, or any one else, to enter upon and take the land of appellant or to damage it for any use whatever. If entry was made upon the land of appellant and damage done, the persons so entering were trespassers, and liable as if no condemnation proceedings had been commenced.

It is also urged that it is grossly inequitable to permit appellee, or the city of Chicago, to withdraw the funds deposited under the void order of the court, after having

entered upon the land and damaged it and other property in contemplation of the proposed public use, and that the funds should stand as security for payment of the damages thereby occasioned to appellant's property. Without extending the discussion, it is sufficient to say that the condemnation proceeding is in no essential particular equitable in its character. The deposit of the money, and the condition upon which it was deposited, were solely in pursuance of the void order of the court. As already seen, under the statute, the deposit is to be made only for the payment of compensation awarded to the land owner, and it follows, necessarily, that the only lawful purpose for which the deposit could be required or to which the money could be appropriated was the payment of compensation which has been duly awarded to him. In the event that no compensation is awarded, the purpose and object for which the money was deposited cease, and the court has no authority, in that proceeding, to hold and apply it to or for any other purpose. This court having found in the *Ligare case* that no right of condemnation existed, the proper order reversing the judgment of the court below, without remandment, was entered, and it necessarily follows that no compensation for the land of appellant taken or damaged could be entered in that proceeding.

It is unnecessary to determine here whether, if appellee was insolvent and appellant had a valid demand against it, a court of equity might or would, upon proper bill filed, lay hold of the fund and preserve it intact pending the ascertainment of appellee's damages. If the city of Chicago, or appellee, is wrongfully in possession of appellant's property, or committed injuries thereto, he has the same remedy as he would have against any other trespassers, so far as protection by the condemnation judgment or proceedings would avail them,—that is to say, the proceeding in condemnation being void, it would

afford no protection in the proper proceeding to recover damages.

We are of opinion that the judgment of the Appellate Court was correct, and it will accordingly be affirmed.

*Judgment affirmed.*

Mr. JUSTICE MAGRUDER, dissenting:

This is a petition, filed on June 10, 1892, in the Superior Court of Cook county by the appellee for an order, requiring the clerk of said court to return to the Merchants' Loan and Trust Company a certificate of deposit for $35,000.00, "given in the case of the *City of Chicago* v. *George G. Ligare,* lately pending in said court," duly endorsed, and requiring said bank or trust company to return to petitioner said money with interest. The petition did not make the city, or the trust company, or the clerk, or Ligare, or any other person or corporation, a party defendant thereto, but written notice was served upon Ligare and the trust company that the petition would be called up for disposition. Ligare appeared, and moved to dismiss the petition, which motion was overruled, and exception taken. He then filed a special demurrer to the petition, which being overruled he excepted and stood by his demurrer. The petitioner then introduced certain documentary proofs in support of the petition, and the court entered an order in accordance with the prayer of the petition, to which Ligare excepted, and prayed an appeal to the Appellate Court, where the order was affirmed, and the present appeal is prosecuted from such judgment of affirmance.

The case referred to was an attempted condemnation proceeding which came to this court, and is reported as *Ligare* v. *City of Chicago,* 139 Ill. 46, where the ordinances referred to in the judgment hereinafter mentioned are fully set out. The petition herein alleges, that judgment was entered in said condemnation proceeding substantially as follows :

"April 7, 1890, judgment on the verdict, in substance as follows: Recites attendance of counsel; separate trial as to Ligare, as the owner of said lots 1, 2, 3 and 4, in block 10; that no other persons are interested in said lots except the Connecticut Mutual Life Insurance Company and the Joliet Stone Company, both of which parties were duly made defendants and served with process, and that the insurance company has been defaulted for want of appearance, and that the interests of the Joliet Stone Company have been withdrawn from this proceeding by a stipulation made between the parties, and that the motion for new trial and in arrest of judgment were duly made and argued. Thereupon it is considered by the court that it ought to proceed and adjudge and make such order as to right and justice shall appertain, etc., and the court does decree, adjudge and order:

"(*a*) That the motion to vacate the verdict and report of the jury be overruled, whereto defendant, Ligare, excepts.

"(*b*) Like order as to motion in arrest.

"(*c*) That the owners and parties interested do recover $25,000 as and for their full compensation for lots 1 and 2 to be taken by said city for the uses and purposes set forth in said petition and in the ordinances of said city, specified in the pleadings herein, whereto defendant, Ligare, excepts.

"(*d*) That the owners and parties interested do recover for their full compensation for the damage which they will sustain and the injury which will be done to said lots 3 and 4 from the taking, appropriating and using, for the purposes named in said petition and ordinances, said lots 1 and 2 and the filling of said Ogden slip, and as a condition precedent to the taking, appropriating and using of the said lots 1 and 2 the further sum of $10,000, whereto defendant, Ligare, also saves his exception.

"(*e*) That the city of Chicago may, upon the payment of the full compensation aforesaid, amounting to $35,000,

or a deposit of the same as required by law, thereupon enter upon and use the said lots 1 and 2 for all the purposes specified in said petition and ordinances, whereto defendant, Ligare, also saves his exception.

"(*f*) Hereupon said George G. Ligare prays an appeal to the Supreme Court, which is allowed on filing, within thirty days from the date of the judgment, his appeal bond in $500, with Ashabel G. Ligare as surety, conditioned as the law directs, together with his bill of exceptions.

"(*g*) Notwithstanding said appeal, petitioner shall nevertheless have the right to enter upon, take and use said lots 1 and 2 for the purposes mentioned in said petition and ordinances, on condition of the payment to the owners and parties interested, of said sum of $35,000, or the deposit of the same with the Merchants' Loan and Trust Company of Chicago, or such other bank as may be selected by agreement of the parties hereto, to be paid to said defendant, or the persons legally entitled thereto, on the final decision or settlement of this case, or returned to said petitioner or party making said deposit, if it shall be entitled thereto.

"(*h*) And upon further condition that said petitioner shall also execute and file in this case a good and sufficient bond, to be accepted by said defendant or approved by the court, in the penal sum of $40,000, conditioned for the payment to said George G. Ligare, or the persons entitled thereto, of such compensation as may be finally adjudged to him or them in this suit in case of any subsequent trial of the same pursuant to law,—to which leave to take said lots 1 and 2 the defendant saved his exception.

"(*i*) Provided that said petitioner shall also file in this case a further good and sufficient bond, to be accepted by said defendant or approved by the court, in the penal sum of $50,000, conditioned that in case it shall be finally adjudged and determined that said city of Chicago has

no lawful power to authorize or direct the filling of said Ogden slip according to the provisions of said ordinance, said petitioner shall and will, immediately thereupon, proceed to remove and clear out, or cause to be removed and cleared out, from said Ogden slip all filling, obstruction, work and materials, if any, which shall have been placed there by said petitioner or said railroad company, and shall complete such clearing out and restoration of said Ogden slip within a reasonable time next after such final decision,—that is, the petitioner shall restore, or cause to be restored, said property as it now is, with all means of access in so far as they are interfered with by anything done by the petitioner or said railroad companies under said ordinances and these proceedings.

"(*j*) And that in case of the final failure of said condemnation proceedings said petitioner shall also restore to said defendant, or the person entitled thereto, said lots 1 and 2 in as good condition as when the same were taken under these proceedings, with access as aforesaid.

"(*k*) And that in case said defendant be put to any action, suit or proceedings to enforce his rights under said bond, or any condition thereof, then and in that case he shall be also entitled to recover all the expense, costs and counsel's fees which he may reasonably incur in that behalf,—to which leave to fill said Ogden slip the said defendant, Ligare, saved his exception.

"(*l*) Judgment against petitioner for costs to be taxed.

"The order for possession, entered May 27, 1890, recites that Ligare has filed his appeal bond, duly approved, and his bill of exceptions, duly signed; that the city of Chicago has filed the bond of the Illinois Central Railroad Company, one of the parties interested in the condemnation aforesaid, in the sum of $40,000, together with the bond of the same company in the sum of $50,000, both of which bonds are specified in the judgment order entered upon the verdict herein, and has also caused the deposit required by said order to be made as specified therein.

Thereupon it is finally ordered by the court that the petitioner may proceed to take and use, or permit the railroad companies specified to take and use, the property condemned, as specified in said judgment order."

The petition alleges that the said bonds were filed and are still in force; that said bank executed and delivered to said clerk on May 26, 1890, the said certificate of deposit, which is as follows:

"$35,000.          CHICAGO, ILL., *May 26, 1890.*
"*The Merchants' Loan and Trust Co., Established 1857.*

"Chicago, Madison and Northern Railroad Co. has deposited in this bank $35,000, payable in current funds, to the order specified on the reverse hereof, and the return of this certificate properly endorsed.

E. B. POWERS, *Receiving Teller.*"

Endorsed: "The within deposit is made under an order of the Superior Court of Cook county, Ill., in case of City of Chicago *vs.* Ligare, No. 123,780, and said sum of $35,000 is to be paid out, with interest at three per cent, upon the further order of the court to be hereafter made. This certificate is delivered to the clerk of said court for safe keeping, and a copy is given to said Ligare and said depositor."

That said judgment, upon appeal by Ligare to the Supreme Court, was reversed without remanding the cause; that a writ of restitution was denied; that "said city, nor petitioner, nor any other person, is in possession of said premises or any part thereof under or by virtue of said judgment or proceedings in this court; that said city is in possession of said premises, but such possession is held solely by virtue of a lease of said premises made by Ligare and running until May, 1896, or later."

The judgment in the condemnation proceeding was reversed without a remanding order, upon the ground that a city has no power to condemn land for a street for the purpose of turning over the street to the exclusive

use of railroad companies. (*Ligare v. City of Chicago*, 139 Ill. 46). The judgment of reversal was a final disposition of the case. Hence, the petition seeking to reach the fund in court was in the nature of a new proceeding, and should have made all the parties interested defendants. The clerk holding the certificate, and the bank holding the money, were mere trustees for the benefit of such person as the court should name in its order. The petitioner claimed to be the *cestui que trust*, who was entitled to receive and collect the certificate of deposit. The petition was in the nature of a bill to enforce a trust, and, therefore, the trustees and the persons, shown on the face of the petition to have an interest in the disposition of the trust estate, should have been made parties. It was not sufficient, that counsel for petitioner claimed to have authority to act for the city and the bank.

The petition, being thus a bill in the nature of a bill to enforce a trust, must be interpreted by the rules applicable to a proceeding in equity. One of the most familiar of these rules is, that he, who asks equity, must do equity. Another one of these rules, no less familiar, is, that, where equity gets jurisdiction for one purpose, it will retain it for all purposes. An application of these rules to the facts presented by this record will show, that it would be highly inequitable to grant the relief prayed for in this petition, without further allegations making a more specific offer to do equity. The petition ought either to allege, that the injury, authorized by the judgment to be done to appellant's reversionary interest in the lots, has not been done, or to offer to undo such injury, if it has been inflicted, by restoring the property to its former condition. This will appear from an examination of the contents of the petition.

The petition sets out in full the condemnation judgment, as explanatory of the origin of the trust fund, or, in other words, as showing the object and purpose of the deposit of the $35,000.00. The judgment gives the city of

Chicago the right to enter upon, take and use appellant's lots for the purposes mentioned in the condemnation petition, and the ordinances set out in the condemnation proceeding, on condition of the payment to appellant and others of $35,000.00, or the deposit of the same in the bank, to be paid to appellant, or the persons legally entitled thereto, on the final decision or settlement of the condemnation suit, or to be returned to the city of Chicago, or party making said deposit, "if it shall be entitled thereto." The right thus conferred upon the city was given to it, nothwithstanding the appeal of the appellant here, who was the defendant there, from the judgment condemning his property.

What the purposes were, for which the city was to use appellant's lots, will be seen by reference to the case of *Ligare* v. *City of Chicago, supra.* The lots are 100 feet deep, and lie south of Archer avenue which is 60 feet wide. The 100 feet, when condemned by the city, were to be added to Archer avenue, making that street 160 feet wide. The city was then to give to the present appellee, the Chicago, Madison and Northern Railway Company, and the Chicago and Alton Railroad Company, the right to lay down six tracks, in addition to one already there, upon the north 90 feet of said 160 feet, said north 90 feet including the north 30 feet of Ligare's lots. A city street car company was to remove its track from the old street, and run its line on the south 70 feet of appellant's lots. The railroad companies were to be allowed to build a wall 12 feet high dividing the north 30 feet from the south 70 feet of said lots, and a sidewalk, when ordered by the city, along the south side of said wall. The city was also to condemn and fill up Ogden slip, a navigable water-way connected with the south branch of the Chicago river and lying east of said lots, thereby destroying the dock frontage of the lots upon said slip. Ogden slip was to be thus permanently filled with earth, at the cost, not of the city, but of the present appellee.

In addition to the facts thus appearing from the peti-
tion and ordinances in the condemnation proceeding, the
judgment and order of possession therein entered show
that the deposit of the $35,000.00 was made, not by the
city, but by appellee, and that the bond for $40,000.00
to secure the payment of future compensation, which is
required by section 14 of article 9 of the City and Village
act in cases of lawful condemnation by cities and vil-
lages, was filed and executed, not by the city, but by the
Illinois Central Railroad Company. Moreover, said order
of possession directs, that the city of Chicago "may pro-
ceed to take and use, *or permit the railroad companies speci-
fied,* to take and use the property condemned, as specified
in said judgment order."

From this review, nothing can be more evident than
that the condemnation proceeding, though instituted by
the city, and the condemnation judgment though entered
in favor of the city, were really for the exclusive benefit
of appellee and other railroad companies. The taking
and using of appellant's property for the purposes, and
in the manner above stated, were really to be by appellee
and said railroad companies, though the right so to take
and use was secured in the name of the city, so far as it
was secured by said judgment. Hence, the allegation,
that neither appellee, nor the city is in possession of the
lots under the judgment, but that the city is in possession
under a lease made by Ligare, is not sufficiently definite.
Whatever possession the city may have can only be for
the benefit of appellee and the railroad companies, and
is therefore, in effect, their possession, and not that of
the city. The petition does not describe the lease fully
enough. It is not stated that Ligare made any lease to
the city. The allegation of the petition is entirely con-
sistent with the theory, that appellee may have found a
tenant of Ligare in possession, and may have purchased
his leasehold interest, with a view of using the posses-
sion thereby acquired to hold the property in the event

of a failure of the condemnation proceeding. That appellee and the other railroad companies own and control this lease was shown by a stipulation introduced in evidence by appellee in support of its petition, and which contains the following recital: "Whereas the parties, for whose benefit said lots 1 and 2 are sought to be taken, have acquired said lease."

The allegation of the petition in regard to the lease is insufficient, even if it be true that the city, whose name in this instance is but a cover for appellee, is in possession under the lease. The question is, has the city or appellee, being in possession whether under the lease or otherwise, made such use of appellant's lots as was authorized by the judgment? Have railroad tracks been laid down upon the lots? Have a wall, twelve feet high, and a sidewalk on the south side thereof, been built upon the lots? Has the slip been filled up with earth, thereby destroying the dockage privileges on the east side of the lots? Are appellee and the other railroad companies mentioned now using the lots for the operation of their roads? If these questions can be answered in the negative, then the petition should contain averments negativing the existence of such injury and such use. If the questions cannot be answered in the negative, then the petition should offer to restore the property to the condition it was in before the injury was inflicted. Otherwise, the petition is asking equity without doing equity, or offering to do equity.

If the appellant's property has been injured and changed in its character by the laying of railroad tracks upon it, and by the erection of a wall and sidewalk upon it, and by the filling up of the water-way on which it fronts, and more especially if the appellee and other railroad companies, who are in possession of it, are using it for railroad purposes by passing their cars over it and in other ways, then it would be most inequitable to allow appellee to take out of court the deposit of $35,000.00

without requiring it to undo the wrong done. The right to thus change the character of the property, and subject it to railroad uses, was conferred upon appellee, upon condition that it should make a deposit of $35,000.00 to be returned to it, in the event of a reversal of the judgment, "if it shall be entitled thereto." By the very terms of the creation of the trust, a court of equity, upon an application to enforce it, is empowered to examine into the circumstances to see whether the applicant is entitled to a restoration of the money. If the judgment of condemnation had been affirmed, appellant would have been forced to part with his property and take the $35,000.00. The judgment having been reversed, a court of equity ought to require compensation, for the injury done the property, to be paid out of the fund deposited. The fund was made use of as the means of obtaining permission to injure the property, and, therefore, it ought to be made use of in a court of equity as a means of restoring the property to such condition, as it was in before it was thus injured. Otherwise, appellant's property will have been damaged for an improvement, claimed to be public in its character, without just compensation. The power of a court of equity, in such a case as this, to determine the extent of the injury thus inflicted, and the amount of damages to be paid on account of such injury, is an incident to the jurisdiction which it has to enforce the trust. The granting of full relief is auxiliary to the main jurisdiction, and avoids a multiplicity of suits.

The lease referred to was introduced in evidence by appellee in support of its petition. It bears date March 8, 1886. By its terms Ligare, the appellant, leases to the Joliet Stone Company for ten years from May 1, 1886, to April 30, 1896, said lots 1 and 2, and lots 3 and 4 directly south of them, "being a tract of land or dock property 200 feet square on Ogden slip," with all the personal property on the premises, with the use of Ligare's interest in the railroad in front of the tract, subject to

160—35

the provisions of his agreement with the railroad company, and the use of all the switches on the land, which were to be left there. The lease contains, among other covenants, an agreement that the lessee will not permit the premises to be used for an illegal purpose, or any other purpose calculated to impair the value of the surrounding property for present use, or otherwise. By the proceedings in the condemnation proceeding and by the stipulation above referred to, it is shown that appellee, and the other railroad companies, not only acquired said lease, but made some arrangement with the tenant, the Joliet Stone Company, which made it unnecessary to enter any judgment in the condemnation suit as to the rights and interests of the tenant. By said stipulation, made between the assignee of the Joliet Stone Company and Ligare, it was agreed, that one-half the rents under the lease should be suspended during the pendency of the appeal from the condemnation judgment; that, in case of an affirmance, the whole lease should be canceled; that, in case of a reversal, the lease should be revived as to the suspended rents, and should remain in force.

It is contended that, by this stipulation, appellant recognized the right of the parties, who acquired the lease, to the possession of the property, and that he is estopped from denying the validity of such possession. I do not understand, that appellant denies the right of possession under the lease, which gave the tenant the power to under-let the premises. During the pendency of the appeal from an unlawful judgment of condemnation which took one-half of his property away from him against his will, appellant was not obliged to surrender his interest in a valuable lease of his land, and in the rents accruing thereunder, by canceling the lease. Appellee did not choose to condemn the interest of the lessee, as well as of the landlord, in the premises, but chose rather to obtain the lessee's interest without condemnation, and thereby itself become the lessee of the premises.

Consequently, when the condemnation proceeding was instituted, appellee stood in the relation of tenant to appellant. Being tenant, it sought to condemn appellant's reversionary interest in the premises. The uses, to which the appellee was authorized by the judgment to put the property sought to be condemned, were not such uses as were warranted by, or consistent with, the terms of the lease. Those uses had relation to the reversion; they changed the whole character of the property, and permanently affected the nature of the reversionary interest. Possession under the lease did not authorize the laying of railroad tracks, the building of walls and sidewalks, and the filling up with earth of a navigable water-way adjoining the land. Such injuries, as would arise from these acts, appellee was not justified in committing by the terms of the lease, but solely by the judgment of condemnation and by the deposit of the amount of such judgment. A landlord has a right to restrain his tenant from committing waste, and thereby impairing the value of the reversion. It has been held, that an injunction may be obtained against a lessee to prevent him from making material alterations in a dwelling house; as, by changing it into a shop or warehouse. Can there be any doubt, that appellant, as defendant to a bill in equity to enforce the execution of this trust, could file a cross-bill to enjoin such uses of the lots in questions as would amount to waste, and injure the value of the reversion? We think not. Equity, having jurisdiction to stop the waste, may award damages for waste committed. (1 Pomeroy's Eq. Jur. sec. 237; 2 Story's Eq. Jur. sec. 913; *Douglas* v. *Wiggins*, 1 Johns. Ch. 435). For these reasons, I am of the opinion, that appellee should be required to aver and show, that it had not injured, or was not using, the property in the manner stated, before it could be entitled to withdraw a fund deposited under a judgment condemning the very reversionary interest, which was affected by such injury or use. Appellant is not obliged

to await the termination of the lease, and take back his property in the ruined condition produced by the acts above indicated, if there have been such acts.

It is further contended, that appellant's remedy is by suit on the bond for $50,000.00. Section 14 of article 9 of the City and Village act (1 Starr & Cur. Stat. page 491,) was the statutory provision, under which appellee sought in the name of the city to condemn the property in question. That section does not require the execution and filing of any such bond, as the bond for $50,000.00 described in the judgment. It provides, that no appeal from the judgment of condemnation shall delay proceedings under the ordinance, if the city shall do two things, *first*, deposit, as directed by the court, the amount of the judgment and costs, and, *second*, file a bond in court to secure the payment of any future compensation, which may at any time be finally awarded to the party appealing. Here, these two things were done in the manner already indicated. As to the bond for $40,000.00 to secure the payment of such future compensation, the allegation of the petition, that it is still in force, is contradicted by the balance of the petition. If the city had had any power to make such a condemnation as was attempted, a bond executed by the city to secure the future compensation would have been valid, as given in accordance with the requirements of the statute. But as the judgment here was held invalid for want of power in the court to render it, and was reversed without a remanding of the cause, no future compensation could be awarded in that proceeding, and, consequently, the bond could not be made to serve any purpose, and cannot be in force.

As to the bond for $50,000.00, which was also executed by the Illinois Central Railroad Company, and not by the city, there is no averment in the petition, nor anything to show, that appellant ever accepted it. The judgment directing it to be filed was reversed, and is of no effect. I see no reason why appellant can be compelled to rely

upon it, unless he chooses to do so.   It is not set out in
the petition, and we have no means of knowing its pre-
cise terms.   But if it was drawn in accordance with the
directions contained in the judgment, it was conditioned
that, in case it should finally be adjudged that the
city of Chicago had no power to authorize the filling of
said Ogden slip, said city would immediately thereupon
proceed to remove and clear out, or cause to be removed
and cleared out, all the filling placed there by the city,
or "said railroad company," and complete such clearing
out within a reasonable time after such decision; that is,
the city would restore said property to the condition it
was then in, or cause it to be so restored.   By the terms
of the ordinance, the slip was to be filled up at the cost
of appellee; and, properly so, because it was to be filled
for appellee's benefit.   Hence, the city would undoubt-
edly expect appellee to clear out the slip.   Appellant
is thus asked to look to the obligation of the Illinois
Central Railroad Company, that the city of Chicago will
cause the slip to be cleared out by appellee.   According
to the copy of the order of reversal attached to the peti-
tion, it was adjudged by this court on October 31, 1891,
that the city had no power to fill up the slip.   The present
petition was filed on June 10, 1892.   By referring appellant
to a remedy upon the bond, it would appear that appellee
had not cleared out the slip, or restored the property to
its former condition, when the petition was filed.   If such
is the fact, then neither the city nor appellee proceeded
to clear out the slip, or restore the property, immedi-
ately upon the rendition of the decision referred to.
Appellee thus confesses that the condition of the bond
is broken, and that neither it nor the city has performed
the obligation, to secure the performance of which the
bond is alleged to have been given.   A party cannot
come into equity, and ask for relief, with the confession
in his mouth of a violated obligation.   The right to use
the property for the purposes stated was granted, upon

condition of the execution of the bonds, as well as of the deposit of the money. The bonds and the deposit all related to the same matter. By means of them, appellee secured the opportunity of obstructing and injuring appellant's property. He is not bound to resort to the bond, but is entitled to look for relief to the deposit, when appellee asks for a restoration of the deposit. As appellee seeks to take the money out of court without making appellant whole, and insists that appellant be remitted to the tedious and uncertain remedy of a suit against the Illinois Central Railroad Company when such suit is made necessary by its own default, it is not coming into a court of equity with clean hands; it is asking the interposition of equity in its own behalf without itself doing equity.

I think that the judgment of the Appellate Court, and the decree or order of the Superior Court of Cook county, should be reversed, and the cause remanded to the latter court with directions to permit the petition or bill to be amended by making proper parties and otherwise, as herein indicated, and with further directions to proceed in accordance with the views herein expressed.