ELEANOR L. BISHOP *vs.* NORTH ADAMS FIRE DISTRICT.

Berkshire.    September 8, 1896. — January 9, 1897.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Waterworks — Eminent Domain — Invalid Taking of Land — Remedy — Damages.*

A fire district was authorized by statute, for the purpose of supplying the district and certain towns with water for the extinguishment of fires and for domestic uses, to take certain waters and convey them through the towns, and also to take and hold any lands "necessary for obtaining, taking, and conveying said water and laying, constructing, and maintaining aqueducts "; and was empowered for these purposes to make excavations, and to carry any pipe over or under any public or other way, and, under the direction of the selectmen, to enter upon and dig up such way " for the purpose of laying down, maintaining, or repairing any pipe, drain, or aqueduct "; and was made liable to pay all damages sustained thereby. *Held*, upon a petition by a landowner for an assessment of damages, that, so far as the aqueducts were concerned, the statute did not authorize the taking of land outside of that necessary for the laying and constructing of the pipes, nor the imposition of a perpetual servitude upon large tracts of adjacent land for the mere purpose of furnishing the material for constructing and repairing the aqueducts.

If excavations on land are made in pursuance of an attempted taking of the land under statutory authority, which taking turns out to be invalid, the landowner

cannot recover for such taking, but his remedy is by an action of tort for a trespass.

A temporary interruption of travel to and from a person's land, caused by excavations made thereon by public authorities in laying pipe in front of the land, does not entitle him to relief, upon a petition for an assessment of damages for a taking of the land which turns out to be invalid; nor does the fact that the highway, of which he owns the fee, is subjected to an additional public use by the laying of the pipe, entitle him to relief.

PETITION to the Superior Court, for a jury to assess the damages for an alleged taking by the respondent of the petitioner's land in Williamstown. Trial before *Maynard*, J., who, at the respondent's request, ruled that, upon the pleadings and evidence, the petitioner could not recover, and directed the jury to return a verdict for the respondent; and the petitioner alleged exceptions. The facts appear in the opinion.

The case was argued at the bar in September, 1896, and afterwards was submitted on briefs to all the judges.

*C. E. Burke*, for the petitioner.

*M. E. Couch*, for the respondent.

LATHROP, J. The St. of 1889, c. 144, authorized, in § 1, the North Adams Fire District, for the purpose of supplying said district, the inhabitants of North Adams, and the inhabitants of that portion of Williamstown lying adjacent and contiguous to the proposed main line of pipe through which the water was to be conducted, with pure water, for the extinguishment of fires, and for domestic and other purposes, to take by purchase or otherwise the waters of a certain brook and its tributaries in Williamstown, and convey the water through Williamstown and North Adams; and to " take and hold by gift, purchase, or otherwise, any land, rights of way, and easements necessary for obtaining, taking, and conveying said water and laying, constructing, and maintaining aqueducts, watercourses, reservoirs, storage basins, dams, and such other works as may be deemed necessary for collecting, purifying, storing, retaining, discharging, conducting, and distributing said water."

By § 2, the fire district is required, within sixty days after any taking under the act, to " file and cause to be recorded in the registry of deeds for the county and district in which such land or other property is situated a description thereof sufficiently accurate for identification, with a statement of the purpose for which

the same was taken, which statement shall be signed by the chairman of the prudential committee of said fire district."

By § 3, the fire district was given the power, for the purposes aforesaid, among other things, to make excavations, and to carry any pipe over or under any "public way, highway, or other way, in such manner as not unnecessarily to obstruct the same"; and, under the direction of the boards of selectmen of the towns of North Adams and Williamstown, to "enter upon and dig up such road, street, or way for the purpose of laying down, maintaining, or repairing any pipe, drain, or aqueduct."

By § 4, the fire district is liable to pay " all damages sustained by any persons or corporations by the taking of or injury to any of their land, water, water rights, rights of way, easements, or property, or by the constructing or repairing of any aqueduct, reservoir, or other works." And damages are to be assessed and determined, in the case of any person sustaining damages as aforesaid, in the manner provided by law when land is taken for the laying out of highways.

The petitioner is the owner of five lots of land in Williamstown, all of which, except one, abut upon a public highway, called the Back Road. The lots abutting on the highway have in all an area of over fifty acres, and the lot not abutting on the highway is connected with the other lots, and has an area of about three acres. There are no fences between any of the lots.

At the trial in the Superior Court, there was evidence tending to show that on or about November 15, 1889, a water pipe of the respondent was laid through the Back Road, which lies westerly of the petitioner's land, until the pipe approached the southerly boundary of her land, when it crossed the highway to the west and passed southerly outside the limits of the way through the land of one Russell Briggs, through which a dike had to be constructed for the pipe; that in the road in front of the petitioner's land the pipe was laid on the surface, and earth and soil were taken to fill the road and cover the pipe, and earth and soil were also taken and carried on to the land of Russell Briggs to construct the dike and to cover the pipe ; and that excavations were made into the land of the petitioner along the easterly side of the way in two places for about thirty feet, to obtain the earth and soil so used.

The exceptions recite: " The petitioner testified that the excavations made by the agents of the fire district aforesaid in laying said pipe rendered it impossible to drive on to her said land."

The petitioner also introduced evidence as to the value of her five lots of land at the time of the alleged taking, and damages for taking the same, contending that the description in the alleged taking embraced and included all of the lots.

The petitioner was allowed to put in evidence, against the objection and exception of the respondent, a certified copy of an instrument, recorded in the registry of deeds, which the petitioner contended was a taking of all of her lots. After the admission of this instrument, the presiding justice ruled that, upon the pleadings and evidence, the petitioner could not recover, and directed the jury to return a verdict for the respondent ; and the case comes before us on the petitioner's exceptions.

The principal questions which have been argued before us by the counsel for the respondent relate to the admissibility in evidence of the certified copy of the instrument of taking. The objections made to this in the court below appear to be that there was no evidence of any vote of the respondent relating to the alleged taking of the petitioner's land, nor how such an instrument came to be recorded, nor by whose authority it was made, nor whether the person whose name was appended was ever chairman of the prudential committee of the respondent.

We do not find it necessary to determine these questions, even if they are open upon the exceptions before us. For the purposes of the case we consider the alleged taking to be in evidence. The first questions to be determined, then, are what the respondent took, and how far the taking was authorized by law.

The instrument in question is dated on January 6, 1889, which is probably a mistake for January 6, 1890, as the instrument was recorded in the registry of deeds on the latter date, and the language of the instrument relates to a time between the two dates. It recites a taking, on November 15, 1889, under the St. of 1889, c. 144, of " the sole and exclusive right and privilege at all times hereafter to lay down, keep, and for-

ever maintain in good repair an iron pipe twenty-four inches
in diameter (inside measurement) for conveying and distribut-
ing pure water for the purposes named in said act, in, along,
and through a certain piece or parcel of land situate in Williams-
town in said county, bounded on the north and east by land of
Clarence Whitney, on the south by the Stevenson lot, so called,
and on the west by lands of Russell R. Briggs and of Thomas
Quinn, as the pipe of the said fire district is now laid. The
said water pipe of the said fire district is laid wholly within
the limits of the public highway leading from North Adams to
Williamstown, known as the Back Road, the fee of which is in
the name and owned by Eleanor L. Bishop of North Adams in
said county, subject to the public easement of a highway." It
is evident that thus far there was no attempt to take the whole
of the petitioner's land, or even an easement in the whole. The
general language employed covering the petitioner's land and
the road is qualified by the words " as the pipe of the said fire
district is now laid," as well as by the words which state where
the pipe is laid. The fair meaning of the instrument is simply
that an easement was taken in the public highway. It is there-
fore immaterial that the entire tract was inaccurately described
by stating that it was bounded on the north and east by land of
Clarence Whitney, and on the south by the Stevenson lot, when
in fact it was not so bounded.

The remaining portion of the taking is thus described : " The
said fire district did also take at the time and for the purposes
aforesaid the right to take at all times after the laying of the
said water pipe by the said district as aforesaid sufficient earth,
soil, and stones from the tract hereinbefore described to con-
struct the trench and to cover the said water pipe of the
said district adjacent to said tract, and keep the same in per-
petual repair, with the right at all times hereafter to enter
upon said tract of land with men and teams to keep and
maintain the said water pipe in good repair for the purposes
named in said act."

The language here used is ambiguous. The words " the tract
hereinbefore described " might be construed to include the land
of the petitioner including the road, but the fact that the water
pipe is described as being " adjacent to said tract " apparently

shows that the intent of the instrument was to take the land of the petitioner exclusive of the road. The purpose was declared to be, not only to obtain materials for the construction of the trench, but to keep the same in perpetual repair, thus subjecting the land of the petitioner, inclusive or exclusive of the road, to a perpetual servitude.

We find no authority for such a taking given in the act. The only words in § 1 which have any application are these : " and may also take and hold . . . any land . . . necessary for obtaining, taking, and conveying said water, and laying, constructing, and maintaining aqueducts." But neither these words nor the general words in § 3 are, in our opinion, broad enough, so far as the aqueducts are concerned, to authorize the taking of land outside of that necessary for the laying and constructing of the pipes, and do not authorize the imposition of a perpetual servitude upon large tracts of adjacent land for the mere purpose of furnishing the material for constructing and repairing the aqueducts. The grant of power to take land by the right of eminent domain is not to be extended by implication or inference. *Rensselaer & Saratoga Railroad* v. *Davis*, 43 N. Y. 137, 146. *New York & Canada Railroad* v. *Gunnison*, 1 Hun, 496.

To construe the taking as valid would give to the respondent, which is merely a quasi municipal corporation, (see *Prout* v. *Pittsfield Fire District*, 154 Mass. 450,) a greater power than is given to municipal or even to railroad corporations by existing laws. Thus, under the Pub. Sts. c. 49, §§ 99–101, cities and towns may take land for gravel and clay pits for a length of time not exceeding ten years, and the report of the laying out is required to state the extent and depth of the excavation to be permitted. See *Hatch* v. *Hawkes*, 126 Mass. 177. By the Pub. Sts. c. 112, §§ 88, 91, 95, a railroad corporation may take land outside the limit of its location for the purpose of procuring stone and gravel, but can do so only by applying to the county commissioners, who may prescribe the limits within which the same may be taken. See also St. 1884, c. 134.

In the case at bar the petitioner's land abuts on the highway only about six hundred feet, and the respondent has assumed to take the whole of her land, amounting to over fifty acres, to cover the pipe adjacent and keep the same in perpetual repair.

If the statute authorized the taking of any land adjoining, we should be constrained to say that the taking in this case was not necessary, and could not be justified.

At the trial in the court below, the only evidence of value and damages offered by the petitioner was on the theory that all of her lands were taken. As we are of opinion that there was no valid taking of all her lands, she cannot recover for such a taking.

The excavations on the petitioner's land were a mere trespass, for which her remedy is by an action of tort.

While there appears to have been some change in the grade of the road, no claim for this was made in the court below, and there was no evidence as to how this change affected her land.

The statement in the bill of exceptions, that the excavations made in laying pipe rendered it impossible to drive on her land, relates, we presume, to a temporary interruption of travel which would not entitle her to relief. See *Shaw* v. *Boston & Albany Railroad,* 159 Mass. 597, and cases cited ; *Fitch* v. *New York, Providence, & Boston Railroad,* 59 Conn. 414; *In re Squire,* 125 N. Y. 131.

While we assume that the petitioner owned the fee in the highway, the fact that this by the laying of the pipe was subjected to an additional public use did not entitle her to relief. *Attorney General* v. *Metropolitan Railroad,* 125 Mass. 515. *Pierce* v. *Drew,* 136 Mass. 75, 81.

The ruling that the petitioner was not entitled to recover was therefore correct.

*Exceptions overruled.*