GUS J. MILLER and CAROLINE MILLER, Appellees, v. HENRY KRAMER, Appellant.

**Appeal:** ARGUMENT: MOTION TO STRIKE. Where the appellant files his argument and assumes the burden before any argument or notice is due from the appellee, the appellee's argument will not be stricken because not filed in time, or because appellee had given no notice that he intended to waive his opening argument.

**Same:** REVIEW OF INTERLOCUTORY ORDERS. On appeal from a final decree interlocutory orders properly excepted to will be reviewed.

**Private highway:** CONDEMNATION: PLEADINGS. A grantee of land not accessible to any highway, who alleges that his grantor owned land lying between the tract in question and a highway, and at one time a private way existed to the land sold, but that this right of way was not transferred; that there had been no road to the highway over grantor's intervening land because the same was rough and unsuitable for road purposes; and that no claim to a way of necessity over the same had ever been made, states a case under the statute providing for the condemnation of land for a road, even though he might have bought a way from another, or held an unenforceable contract with a third person for a right of way.

**Same:** LOCATION OF ROAD: STATUTE. The requirement of the statute providing for the condemnation of land for a private way, that the same shall be on the division line or immediately adjacent thereto, should not be construed too narrowly, as the term "adjacent" has a broader meaning than the term "adjoining." And where the land immediately adjacent to the division line is so rough as to be impassable for road purposes, the way may be located so as to separate a small tract from the balance of the land through which it runs, since the petitioner must pay all damages to the entire tract as well as for the land taken.

*Appeal from Lee District Court.*—HON. HENRY BANK, JR., Judge.

THURSDAY, JUNE 16, 1910.

ACTION to enjoin defendant from proceeding under sections 2028, 2029, and 2030 of the Code to establish and lay out a road over plaintiff's land to reach a public highway. A temporary writ of injunction was granted, and defendant filed an answer and certain amendments thereto, to which plaintiffs filed a general equitable demurrer. This demurrer was sustained, and, defendant electing to stand thereon, the temporary injunction was made permanent. Defendant appeals. *Reversed* and *remanded.*

*R. N. Johnson* and *T. B. Snyder*, for appellant.

*John L. Benbow*, for appellees.

DEEMER, C. J.—I. Appellant has filed a motion to strike appellees' argument from the files, and to submit without argument from them. This is based upon the proposition that the argument was not filed in time under the rules and the further fact that appellees gave no notice of their intention to waive their opening argument. It appears,

1. APPEAL: argument: motion to strike.

however, that appellants filed their argument and assumed the burden before any argument or notice was due from appellee. Such being the facts, appellant's motion is without merit. Appellees have filed a motion to dismiss the appeal for the reason that it was not taken in time. There is no merit in this.

The rulings on the demurrer from which the appeal was taken were made April 9, 1909, and the appeal was taken August 6, 1909. The final decree was entered April 9,

2. SAME: review of interlocutory orders.

and exception taken, and the appeal is also from the final decree, and was taken in due season. On this latter appeal, all interlocutory, orders to which exceptions were taken may be reviewed. *Koboliska v. Swehla,* 107 Iowa, 124, and *Mueller Lumber Co. v. McCaffrey,* 141 Iowa, 730, sustain these conclusions. See, also, *Holladay v. Johnson,* 12 Iowa, 563; *Lesure Lumber Co. v. Insurance Co.,* 101 Iowa, 514.

II. Having disposed of these technical points of practice, we now come to the merits of the controversy. When this action was commenced, defendant was attempting to proceed under section 2028 *et seq.* of the Code to establish a way over plaintiffs' land. These sections so far as material read as follows:

Any person, . . . owning or leasing any land not having a public or private way thereto, may have a public way to any railway station, street or highway established over the land of another, not exceeding forty feet in width, to be located on a division line or immediately adjacent thereto, and not interfering with buildings, orchards, gardens or cemeteries; and when the same shall be constructed it shall, when passing through inclosed lands, be fenced on both sides by the person . . . causing it to be established. Code, section 2028.

If the owner of any real estate necessary to be taken refuses to grant the right of way, or if he and the person . . . asking its establishment can not agree upon the compensation to be paid therefor, the sheriff

of the county in which said real estate is situated shall, upon the application of either party, appoint six freeholders of the county, not interested in the same or a like question, who shall assess the damages which said owner will sustain, and make report thereof in writing to the sheriff, and, if the applicant for such way shall, before entering upon said real estate for the purpose of constructing such way, pay to the sheriff for the use of the owner the sum assessed, said road may be at once constructed and maintained. Code, section 2029.

The application to the sheriff, and all other proceedings relating thereto . . . and the rights and duties as to other roads, shall be the same as provided in this chapter in relation to the taking of private property for the right of way of railroads . . . and in the chapter or chapters of this code relating to roads, except that the report of the commissioner and the record thereof shall confer no title upon the applicant for the land so taken, but shall be presumptive evidence of the establishment of such way. Code, section 2030.

Section 2028 has been amended in some particulars by the acts of the Twenty-Ninth General Assembly (Acts 29th General Assembly, chapter 82), but, as these are not material, we do not set them forth. Plaintiffs alleged in their petition that they were the owners of certain land in Lee county, and that defendant Kramer had made application to the sheriff for the establishment of a private way or road over plaintiffs' land, alleging that he was the owner of adjoining tracts, and that he had no private way or road therefrom to any highway; and that the sheriff had selected commissioners who were about to enter upon plaintiffs' premises to establish a way or private road. Plaintiffs also alleged that defendant purchased his land from one Hinze and his wife, and that at the time he purchased Hinze and his wife were the owners of adjoining and adjacent lands which extended to and abutted upon a public highway, and they alleged that over these lands defendant had a private way to a public high-

way. They therefore asked an injunction against the establishment of a way over their premises. Attached to the petition was a copy of defendant's application to the sheriff, in which he asked for the establishment of a right of way over plaintiff's lands, alleging that he had no way or road, public or private, from his land to any highway. Defendant filed answer and a motion to dissolve the temporary writ of injunction issued upon the filing of the petition, and, in resistance to said motion, plaintiff Gus Miller filed an affidavit, in which he affirmed that defendant had a right of way over the land of Hinze to a public highway.

Defendant in his answer denied plaintiffs were the joint owners of the land as alleged by them, and denied the allegations of the petition to the effect that he was asking a private way or road, and denied the allegations with reference to the purchase of the lands from Hinze, and averred that he had a private way over their lands to a public highway. He averred, however, that he had filed an application to the sheriff under the statutes heretofore quoted, that the sheriff had appointed commissioners to assess the damages for the taking of the right of way, and that these commissioners were proceeding to act under their appointment. He denied that he was proceeding to establish this way as a private way, but averred that he was proceeding to establish it as a public right of way for the benefit of the public as well as himself. Defendant admitted the allegations of paragraph 5 of plaintiffs' petition, and this necessitates the setting out of that paragraph, which reads as follows:

(5) That Henry Kramer, the defendant, became the owner of the real estate described in his said application by a voluntary conveyance and warranty deed from Earnest Hinze and wife, dated March 16, 1905, recorded in Land Deed Record W on page 173 of the records of Lee county, at Ft. Madison, and by another conveyance under date

of June 3, 1905, from the said Earnest Hinze and wife
to Henry Kramer, became the owner of the following
adjacent and contiguous tract of real estate to that men-
tioned in his application, to wit:    The east one-half
(E. ½) of the northeast quarter (N. E. ¼) of the south-
east quarter (S. E. ¼) of section 32, township 68, range
4 west, of Lee county, Iowa, which deed is recorded in
Land Deed Record W on page 195 of the records of
Lee county, Iowa, at Ft. Madison; that at the time of
the said conveyance of the tracts hereinbefore mentioned
by Earnest Hinze and wife to Henry Kramer the said
Earnest Hinze was also the owner in fee simple of the
adjacent and contiguous tracts of real estate to those
conveyed to the said Kramer, to wit, fifty (50) acres in
the west half (W. ½) of the southwest quarter (S.
W. ¼) of section 33, township 68, range 4 west, ex-
tending up to, intersected, and traversed by the public
highway known as the Ft. Madison & West Point road,
described in the application of said defendant, Kramer.

Defendant further alleged that this was an im-
material allegation, and further pleaded:    "That the
fifty acres belonging to Earnest Hinze extending to the
public highway mentioned in said paragraph is very
broken and cut up with deep ravines and hollows and im-
practicable for road purposes."    He also alleged:  "That
plaintiffs verbally and orally agreed to and with the said
defendant, Henry Kramer, to sell the piece of land owned
by them over which this proposed right of way extends,
and that said agreement between plaintiff Gus J. Miller
and this defendant was reduced to writing a copy thereof
being hereto attached marked 'Exhibit D' and made a part
thereof, and that the said Gus J. Miller refuses to carry out
said contract, and that the plaintiff Caroline Miller refuses
to carry out and perform her oral contract because the same
was for the sale of real estate, and not in writing, and de-
fendant alleges by reason of these facts plaintiffs are es-
topped from maintaining this action, and that they have
not come into equity with clean hands."    He also denied

that he had a public or private road to the land owned by him as alleged in plaintiffs' petition (although this seems to be a conclusion of law rather than of fact). Attached to his answer was a contract signed by himself and Gus J. Miller for some land belonging to plaintiffs. Thereafter plaintiffs filed an amendment to their petition, in which they alleged "that the defendant has a right of way or private road by law granted and maintained over the land of Earnest Hinze, deceased, referred to in paragraph 5 of the original petition of plaintiffs; that a way or road has for more than ten years last past been maintained, traveled, and used over the said land in hauling with teams and wagons and other uses as is usually made of such country roads traversing such land over to the realty of the defendant, purchased from the said Earnest Hinze, as therein alleged."

They also alleged:

That the road as asked for in the application of defendant Kramer, is not upon the division line or immediately adjacent as provided by the statutes of the state of Iowa (sections 2028 and 2029), under which the proceedings are claimed by the defendant to have been instituted and maintained to establish the said road as a public way; but, on the contrary, the said road as asked for and as ordered leaves the said lines crossing and cutting the land of the plaintiffs in twain, leaving a considerable portion thereof on each side of said way, doing greater injury and damage to plaintiffs' land than a road along the quarter section line would do; that the said application shows that the defendant has a consent way or road over the land of Catherine Wiggenjost to the white oak tree, twenty inches in diameter, referred to in said application; that the land of Catherine Wiggenjost extends to the public highway in a direct line from the oak tree aforesaid, and is a shorter course than the distance asked over the land of the plaintiffs; that the land of Catherine Wiggenjost also extends to the public highway on the west of plaintiffs' land; that the application does not show that defendant, Kramer,

is unable to obtain a consent highway over the said land of Catherine Wiggenjost; that the defendant, Kramer, and these plaintiffs, are not adjoining landowners, hence have no division line in common; that the defendant, Kramer, petitioned the board of supervisors of Lee county, Iowa, within the last year representing that the quarter section line and immediately adjacent thereto from the said white oak tree east to the said public highway was a suitable, practical, and proper place for a public highway, and that one could be there constructed and maintained and asked that one be there established by said board.

Defendant denied each and every allegation in this amendment to the petition; but further pleaded as follows: "That the land of Catherine Wiggenjost from the oak tree referred to in the pleadings herein extends to the highway known as Ft. Madison & West Point Road, but alleges that said land is badly cut up by deep ravines and impassable and impracticable for road purposes, and that a load could not be hauled across the same; that the road or right of way sought by him in the application filed with the sheriff of Lee county does not leave the south division line of the property owned by plaintiffs at any point more than about three hundred feet, and that the land of plaintiffs immediately north of said division line and between the right of way in question is badly cut up by deep ravines, impassable, and impracticable for road purposes."

In an amendment to his answer he denied that he had a right of way over the land of Wiggenjost, and further alleged "that the land to which he is seeking an outlet to the public highway was purchased by him from Earnest Hinze, who at the time owned a tract of about fifty acres between said land and the public highway; that there was not then, never was, and is not now a road or driveway from the land purchased by defendant from said Hinze over and across the said land of the said Hinze to the highway; that the said Hinze, nor any

of his agents or employees, ever hauled any wood, produce, or anything else from the land owned by this defendant to the highway across the said Hinze fifty acres; that there never has existed any roadway or driveway or highway, or any means of getting with a team or wagon from the land bought by defendant from Hinze across the Hinze land to the highway; that the said Earnest Hinze is now dead, and said land is owned by his heirs."

The demurrer to these answers as amended was sustained, and defendant excepted. He thereupon filed an amendment to all his answers, in which he alleged: "That at the time he purchased the land to which he is now seeking an outlet to the public highway from Earnest Hinze, the said Earnest Hinze owned a fifty-acre tract of land between the land so purchased by this defendant and the highway; that said fifty-acre tract of land belonging to the said Earnest Hinze was then, and is now, impassable for road purposes, and never used by said Hinze or this defendant to reach the highway, and at the time defendant purchased said land from said Hinze the said Hinze had a right of way out to the highway from the piece of land purchased by this defendant over and across the land of others, which right has not been transferred to this defendant."

A motion was made to strike this amendment which was overruled, and plaintiff, thereupon filed a general equitable demurrer to the answer as thus amended, and also stated as an additional ground of demurrer that the entire matter was adjudicated by the ruling on the first demurrer. This last demurrer was sustained and decree entered as prayed in the petition. On account of differences between counsel as to the state of the pleadings, it has seemed necessary to set them out verbatim at the seeming expense of time and paper. The trial court held that, under the allegations found in defendant's answers

as amended, he not only had an easement over the lands of his grantors to a public highway, but that he also had a way of necessity by implication of law, and was not entitled to proceed under section 2028 of the Code. This conclusion is seriously challenged by defendant's counsel, and they also claim defendant is entitled to have the road established as prayed for, although it is not on the division line.

There are but two questions presented by this appeal, and these are: (1) Has defendant, under the allegations of his answers, a public or private way to his land? (2) Is the proposed road on the division line or immediately adjacent thereto as provided by statute?

The statute seems to contemplate that such a road as was applied for may be established by one who does not have any public or private right of way to his land. This seems to negative the thought that the right to such a public or private way is the equivalent of such way. Now, defendant alleged that his grantor at one time had a private right of way to the land sold defendant, but it also averred, and this was admitted by the demurrer, that this right had not been transferred to defendant. Defendant also alleged that there never was and is not now a road or driveway to the highway, and that there never was any roadway or driveway or means of getting from the land to the highway. With reference to a right of way by necessity or by implication, the answer averred that his grantor's contiguous tract is broken, cut up by deep ravines and hollows, and was impracticable for road purposes, and was then impassable, and was never used by his grantor to reach the highway. From these allegations it would appear that defendant had no public or private way to his land, and that his right thereto, if he had one, was a barren and worthless one. We may assume that he was entitled to a right of way over his grantor's

3. PRIVATE
   HIGHWAY:
   condemnation:
   pleadings.

land by necessity; but this it seems was never claimed or asserted, and, according to the allegations of the answer, the character of his grantor's land was such as that the right was a useless one, for the reason that it was impractical to make a road thereover. It is alleged that defendant might have bought his way out from others; but this he was not required to do. Having no way either public or private he was entitled to procure one under the provisions of section 2028 of the Code before quoted. It is true that defendant alleges a contract with plaintiffs or one of them for a right of way; but for some reason he is not relying thereon, and, as plaintiffs claim nothing on account thereof, it is not necessary to refer to that matter further than to say that the description of the land to be conveyed is very uncertain and as it is for land rather than a right of way defendant can not enforce it against the plaintiffs.

The only remaining and difficult question in the case is: Is the way as proposed on the division line or immediately adjacent thereto? Defendant's allegation with

4. SAME: location of road: statute.

reference thereto is as follows: "That the road or right of way sought by him . . . does not leave the south division line of the property owned by plaintiffs at any point more than about three hundred feet, and that the land of the plaintiffs immediately north of said division line is badly cut up by deep ravines and impassable and impracticable for road purposes." That the question may be better understood we attach a plat of the proposed road, which the parties concede to be approximately correct.

In construing the statute now before us, we held in *Morrison v. Thistle Coal Co.*, 119 Iowa, 705: "That it could not have been intended that the statute should be so interpreted as to make impracticable. or inconvenient the connection of the railroad track authorized to be constructed on the right of way to a mine, and that, if the

proposed right of way follows a division line as nearly as practicable, the statute is substantially complied with. . . . Our conclusion, therefore, is that the statutory provisions above referred to have been substantially complied with, and that the injunction should be denied. It is proper to say that since this condemnation proceeding Code, section 2028, has been amended (Twenty-Ninth General Assembly, chapter 82) so as to eliminate the requirement that the right of way for the railroad furnishing an outlet for a mine shall be on a division line, or immediately adjacent thereto. Without holding that this is a legislative construction of Code, section 2028, we are content with the conclusion that prior to this amendment that section was to have a reasonable construction, and, as the question is not likely to again arise under that section, we do not think it necessary to further elaborate the reasons on which our conclusion is based." The word "adjacent" has a much broader meaning than "adjoining," and must have a reasonable construction. In view of the fact that defendant must pay all damages

due to the establishment of the road and fence the same on both sides, the fact that there will be a corner of plaintiffs' land consisting, according to the plat, of two and sixty-nine hundredths acres segregated from the remainder of the land, is not to be regarded as controlling in view of the allegations of the answer for defendant. He will have to pay the damages due to this segregation as well as damages to the whole tract. Defendant averred that his application was for a public road, and not a private one, and, as the application will bear this construction, plaintiffs are in no position to say that the road should not be established because it is a private one. Taking the allegations of the answers as a whole, we think they were not vulnerable to the demurrer, and that the case should have been tried upon the issues of fact presented thereby. Whether or not defendant is able to prove them upon trial we have no occasion now to consider.

For the reasons pointed out, the demurrer should have been overruled. The decree will therefore be reversed, and the cause remanded for trial according to the law announced in this opinion.

*Reversed* and *remanded.*