P. C. FISHER, Appellee, v. MAPLE BLOCK COAL COMPANY et al.,
Appellants.

**EMINENT DOMAIN:** Statutory Right to Condemn—Strict Construction—Mining Lands. A coal mining company having access to its mining lands, in part by a public way and in part by private way, cannot condemn a right of way for a railway to its said lands, under Secs. 2028, Sup. Code, 1913, and 2031, Code, said sections clearly limiting such right to him who·has no "public or private way" thereto. Especially is this true in view of the rule that statutes conferring the power of eminent domain are to be strictly construed in favor of the private owner.

PRINCIPLE APPLIED: In instant case, the court says: "The proposed mutilation of the Fisher farm and the fact that the benefits to accrue therefrom were only nominally public are suggestive of the reason why the power to condemn should be doled with a sparing hand."

*Appeal from Polk District Court.*—HON. CHARLES A. DUD-LEY and HON. HUGH BRENNAN, Judges.

WEDNESDAY, MARCH 10, 1915.

REHEARING DENIED SATURDAY, OCTOBER 2, 1915.

SUIT in equity to enjoin the contemplated condemnation of land for the purpose of egress and ingress to a coal mine. Temporary injunction was issued and served. Defendants moved to dissolve the temporary writ. A hearing was had upon such motion and evidence was introduced. Thereupon the motion was denied. The defendants appeal.—*Affirmed.*

JOHN L. GILLESPIE, for appellants.

STIPP, PERRY & STARZINGER, for appellees.

EVANS, J.—Three cases are presented upon the same submission. They are all related and present the same question.

P. C. Fisher and E. P. Fisher are husband and wife and owners respectively of adjoining farms, the first of 200 acres and the second of 240 acres. The defendant Maple Block Coal Company is a corporation engaged in the business indicated by its name and the defendant Griffin is the sheriff of Polk county. The coal company proposes to extend a spur track of railroad over the lands of the Fishers for the purpose of reaching proposed shafts in certain coal fields which it holds. The following map will aid an understanding of the controversy:

EMINENT DO-
MAIN : statu-
tory right to
condemn :
strict con-
struction : min-
ing lands.

▨▨▨▨ Land owned by defendant.

▨▨▨▨ Mining Rights owned by defendant.

▥▥▥▥ Land owned by E.P.Fisher.

▤▤▤▤ Land owned by P. C.Fisher.

═══ Public Highway.

At a point within the square abutting on the north line of the SE ¼ of Sec. 28, the coal company has maintained a

shaft for several years, and has had a spur of railroad track extending from such shaft south to the main line of the Rock Island Railroad. It now proposes to sink a shaft in the E ½ of the NE ¼ of Sec. 29 and one in the NE ¼ of the SW ¼ of Sec. 22 and to extend its spur in each direction to such new shafts, forming a Y, as indicated on the map. For that purpose, it proposes to condemn a right of way across the necessary lands of the Fishers. Its right to condemn is challenged by the Fishers. The first action was brought by the coal company against the Fishers to enjoin interference with the survey of the ground by the coal company and its engineers. The other two suits were brought by the Fishers, respectively, each asking to enjoin the coal company from a purported condemnation, on the ground that there is no statutory authority for the same. The one question in the case involves the construction of Secs. 2028 of the Code Supplement, and 2031 of the Code, which are as follows:

"Sec. 2028. Any person, corporation, or co-partnership owning or leasing any land not having a public or private way thereto, may have a public way to any railway station, street or highway, established over the land of another, not exceeding forty feet in width, to be located on a division, subdivision or "forty" line or immediately adjacent thereto; but if a railway is to be constructed thereon, as provided in section two thousand and thirty-one (2031) the same may be located wherever necessary and practicable, but not exceeding one hundred feet in width, and not interfering with buildings, orchards, gardens or cemeteries; and when the same shall be constructed it shall, when passing through enclosed land, be fenced on both sides by the person or corporation causing it to be established."

"Sec. 2031. Any owner, lessee or possessor of lands having coal, stone, lead or other mineral thereon, who has paid the damages assessed for roads established as above provided, may construct, use and maintain a railway thereon, for the

purpose of reaching and operating any quarry or mine on such land and of transporting the products thereof to market. In giving the notices required in such cases, the applicant shall state whether a railway is to be constructed and maintained on the way sought to be established, and, if it be so stated, the jury shall consider that fact in the assessment of damages."

All of the lands owned or leased by the coal company abut upon the public highway, except the NE ¼ of the SW ¼ of section 22, known in the record as the "Kirk forty." This tract does not abut upon the public highway, but it is connected therewith by a strip of ground 33 feet in width, which is owned and used by the coal company as a private way from the highway to such tract.

The coal company bases its alleged right to condemn upon the sections of the statute above quoted. The Fishers contend that by the terms of these sections they are applicable only to owners or lessees of "land not having a public or private way thereto." It is contended for the coal company that such a construction would be narrow and technical and that it would leave the statute wholly inadequate to meet the exigencies of the mining of coal. It is shown that over 90 per cent. of the coal mined by this company is shipped to distant points on the railway. It is probably true that practical coal mining, as carried on today, requires a rail haul for the product. It is probably true, also, that a connection with a mere public highway is not of great practical value to a coal mine. The fact remains that we must read the statute as it is. It presents no special difficulty of construction. Its real meaning stands out quite plainly. If it has become inadequate, since its enactment, to the later development of mining enterprise, that is a question for legislative consideration and not for ours.

The sections above quoted had their origin in Secs. 1

and 4 of chapter 34 of the Fifteenth General Assembly, which were as follows:

"Sec. 1. That any person, co-partnership, joint-stock association, or corporation, owning, leasing, or possessing any lands having thereon or thereunder any coal, stone, lead, or other mineral, may have established over the land of another a public way from any stone-quarry, coal, lead, or other mine, to any railway or highway, not exceeding (except by the consent of the owner of the land to be taken) fifty feet in width. When said road shall be constructed, it shall, when passing through enclosed lands, be fenced on both sides by the person or corporations causing said road to be established."

"Sec. 4. Any owner, lessee, or possessor of lands having coal, stone, lead, or other mineral thereon, who has paid the damages assessed for highways established under this act, may construct, use, and maintain a railway on such way, for the purpose of reaching and operating any quarry or mine on such land and of transporting the products thereof to market. In the giving of the notices required by this act, the applicant shall state whether a railway is to be constructed and maintained on the way sought to be established; and if it be so stated the jury shall consider that fact in the assessment of damages."

If these sections had not been amended, they would furnish ground for the coal company's contention. But Sec. 1 was subsequently amended and it now appears as Sec. 2028, which we have above set forth. The amendment thus indicated could have no function unless it were to restrict the power of condemnation to the class or circumstances therein described, viz., owners and lessees of "lands not having a public or private way thereto." This is the construction which we have previously put upon the statute in its present form. *Morrison v. Thistle Coal Co.,* 119 Iowa 705; *Perry v. Supervisors,* 133 Iowa 281; *Carter v. Barkley,* 137 Iowa 510; *Miller v. Kramer,* 148 Iowa 460.

It is true that when the condemnor comes within the statutory conditions, he may take his choice as between a highway and a railway connection. But he can have only the one "way." No limitation is put upon his use of such way as he acquires. He may use it as a wagonway or railway, and probably both. But having acquired the one or the other, he may not again condemn for outlet purposes; and it matters not, under the statute, whether he has acquired his previous outlet by condemnation or by private contract. It may be true, as claimed by the coal company in this case, that the owner without means of egress is in a more advantageous situation than is he who has one. That depends entirely upon the plans of such owner. These are his own and known to him alone. The statute has been proclaimed in advance and the plans of the owner are made in its knowledge.

We think the statute is not fairly capable of the construction contended for by appellant. If it were, we would still be confronted by the rule that statutes conferring the power of eminent domain are to be strictly construed in favor of the private owner. *McElroy v. Kansas City*, 21 Fed. 257, 260; *Wise v. Yazoo City*, 96 Miss. 507 (26 L. R. A. (N. S.) 1130, 1132); *Ligare v. Chicago*, 139 Ill. 46 (28 N. E. 934, 936); *Chicago & E. I. R. Co. v. Wiltse*, 116 Ill. 449, 456; *City of East St. Louis v. St. John*, 47 Ill. 463, 467; *Bishop v. North Adams Fire Dist.*, 167 Mass. 364, 369 (45 N. E. 925); *Rensselaer & S. R. Co. v. Davis*, 43 N. Y. 137, 146.

The proposed mutilation of the Fisher farm, as indicated by the map and the legs of the Y, and the fact that the benefits to accrue therefrom were only nominally public, are suggestive of the reason why the power to condemn should be doled with a sparing hand. This doubtless explains the amendment by the Twenty-fifth General Assembly of the enactment of the Fifteenth General Assembly.

We are clear that the statute as it is was correctly construed by the trial court. Its order is therefore—*Affirmed*.

DEEMER, C. J., LADD and PRESTON, JJ., concur.