STRAWBERRY POINT DISTRICT FAIR SOCIETY, Appellee, v.
DORA BALL et al., **Appellants.**

**EMINENT DOMAIN:**  Right to Condemn Private Way.  A land-
owner who has, *or may obtain*, a vested interest in a private
way which will afford him reasonable opportunity to pass to
and from his land, and enable him to reach a public way, may
not condemn a private way over the land of another. (Sec.
2028, Code Supp., 1913.)

*Appeal from   Clayton   District   Court.*—W.  J.  SPRINGER,
Judge.

MAY 15, 1920.

REHEARING DENIED SEPTEMBER 25, 1920.

ACTION to enjoin the defendants from opening a public
highway over the land of the plaintiff, under Section 2028
of the Supplement to the Code, 1913.   Opinion states the
facts.   Decree for the plaintiff in the court below.   Defend-
ants appeal.—*Affirmed.*

*Alex Holmes,* for appellants.

*Newberry Bros.* and *D. D. Murphy & Son,* for appellee.

GAYNOR, J.—This action was commenced on the 5th day
of May, 1919.  Its purpose is to enjoin the defendants from
proceeding to condemn a strip 32 feet wide, over and across
plaintiff's land, and from proceeding to lay out a public
highway thereon, extending from the defendants' land on
the west, over plaintiff's land to a public highway on the
east.

The plaintiff is a corporation, and is the owner and in
possession of a parcel of land consisting of about 28 acres,

situated in the eastern part of the north half of the south-west quarter of Section 27–91–16. The plaintiff is a fair association, and its grounds are used for fairground purposes. The defendant Dora Ball is the owner of land immediately west of plaintiff's land. Wheeler, who figures in this case, owns the land immediately south of the land above referred to. The defendants also own the land immediately south of the Wheeler land. On this south land are defendants' buildings, and defendants are in actual occupation of the same. We take it, all the defendants' land is farm land. Their north 40 is used in connection with their south 80.

We submit herewith a plat, which shows correctly the relative position of the pieces of land involved in this suit.

EXHIBIT ONE

The above plat shows a strip of land 16 feet wide, running from defendants' north 40 to their south 80, along the west line of Wheeler's 80. This is the road which, plaintiff contends, gives defendants an outlet. It shows also the proposed road over plaintiff's land. The plat shows also, on the north of the fairgrounds, a road extending almost to defendants' north 40, to which reference will be made hereafter. The public road sought to be *reached* by these condemnation proceedings is a public road on the east of all the land herein referred to, and is shown on the plat.

It is the contention of the defendants that they have no public or private way of going to or from their north 40. On this contention, the defendants were proceeding to condemn land for a road over plaintiff's land, under Section 2028 of the Code Supplement, 1913, and Section 2029 of the Code of 1897, which read as follows:

"Section 2028. Any person * * * owning * * * any land *not having a public* or *private* way thereto, may have a public way to any * * * street or highway established over the land of another, not exceeding 40 feet in width, to be located on a division, subdivision or '40' line or immediately adjacent thereto."

"Section 2029. If the owner of any real estate necessary to be taken *refuses* to grant the right of way, or if he and the person * * * asking its establishment cannot agree upon the compensation to be paid therefor, the sheriff of the county in which said real estate is situated shall, upon the application of either party, appoint six freeholders of the county, not interested in the same or a like question, who shall assess the damage which said owner will sustain, and make report thereof in writing to the sheriff, and, if the applicant for such way shall, before entering upon said real estate for the purpose of constructing such way, pay to the sheriff for the use of the owner the sum assessed, said road may be at once constructed and maintained."

The contention of the plaintiff is, and its action to enjoin is based upon the thought, that the defendants, at the time this action was begun, had a private way leading from

their land to a public highway, and because of this they cannot maintain proceedings under the statute aforesaid, to establish a public road over plaintiff's land; that the fact upon which the right must rest, does not exist.

It goes without saying that the right to proceed under this statute depends entirely upon the existence of the facts upon which the right·rests; that, to justify condemnation proceedings to secure a public way over the land of another, it must appear that the person seeking to exercise the right has no public or *private* way from his land to a street or highway. This is the word and spirit of the law. It must follow logically that, when the facts exist upon which the exercise of the right may be predicated, the exercise of the right cannot be interfered with in a proceeding such as has been instituted here. This necessarily resolves the case into a fact controversy, and presents the question: Did the defendant, at the time he undertook to exercise this statutory right, have a *private* way to his land, such as the statute suggests he is entitled to? If he did not, the statute affords him a remedy by which a way may be secured. If he did have a private way, such as the statute contemplates, then he was without right to proceed under the statute. It must, however, be a vested right of way, and not subject to the will of another. It must be either a vested private right of way, or such a public highway as vests in him a right to use in common with the public.

Prior to 1908, and until his death, which occurred on the 25th day of December, 1914, one Dunning was the owner of the land now owned by defendants. He was the father of the defendant Dora, and upon his death, she succeeded to his title. In the spring of 1908, while Dunning was the owner of this land, some arrangement was entered into between Wheeler and Dunning, under which a lane, 16 feet wide, was fenced off the west end of Wheeler's 80, connecting the 40 on the north with the 80 on the south of Wheeler's land, shown on the plat. This lane afforded ingress to and egress from the land on the south of Wheeler's, and to and from the land in question. Through this lane and over this

strip of land, Dunning and the defendants could and did pass to and from this north 40, from 1908 up to the time this proceeding was instituted. On this south 80 are defendants' buildings, and this lane afforded a fair and reasonable access to the same from their north 40, and from the buildings to the public highway on the east. This was used by Dunning before, and by the Balls ever since, Dunning's death, and was still used by them at the time the condemnation proceedings, herein sought to be enjoined, were begun. The condemnation proceedings were commenced on the 25th day of April, 1919. The application was filed on the afternoon of that day. On the 24th day of April, Wheeler, at the instance and request of the plaintiff, tendered to the defendants a good and sufficient warranty deed to the said strip, and this deed was returned to Wheeler, with defendants' refusal to accept it, on the morning of the 25th day of April. The reason given by defendant for refusing it was that:

"He would not accept any other outlet from his land except that which he proposed to condemn, and would not listen to anything else from anybody."

The evidence shows that this Wheeler lane furnished a fairly good and sufficient road to, and a fair and reasonable exit from, his land on the north to his land on the south. The defendant Ball testified:

"I drove a gang plow over that lane on the west end of the Wheeler 80 this spring, for the purpose of plowing, and nearly mired my team, as I came out right at the outlet. I could possibly mire a team on that road before I get on my wife's land, right at the outlet. There is just a little piece washed out at the outlet, that has been worn down by the cattle walking down there and permitting this to wash out, and it has never been fixed. I didn't try to fix it. It wouldn't take much trouble to fix it. I didn't want to fix it."

It will be noted that the statute does not fix the character or the width of the way, the existence of which must be negatived in order to justify this proceeding, but simply fixes the maximum width, in the event condemnation pro-

ceedings are carried out.    The statute provides that one
owning land, and not having a public or private way out
from the land, may avail himself of the provisions of this
statute.    The statute must be construed to mean that one
who has reasonable ingress to and egress from his land,
over a private or public way, cannot avail himself of the
statute, and condemn a public way over the land of another.

It may be argued, however, that the lane on the west of
the Wheeler land, even though conceded to be a private way,
within the provisions of the statute negativing the right to
maintain the proceedings to condemn, did not lead to a pub-
lic highway.    It led, however, to defendants' land on the
south.    This north land was farmed in connection with the
land on the south.    The defendants' home and all their
buildings are on the land on the south.    There is a public
highway immediately adjoining defendants' land on the
south.    This lane gave access to the land on the south, and
enabled them, by proceeding over their own land, to reach
the public highway to which they were entitled to access,
and this, without let or hindrance.    Where one owns land
from which there is a private way to other land owned by
him, and it is made to appear that the other lands are on
a public highway, it would seem to be not within the spirit
of the statute to permit him to relieve his own land of the
burden of a public highway, and place that burden upon his
neighbor.    For 11 years, this lane along the west side of
Wheeler's land had been open to the use of the defendants,
and had been used by them for ingress and egress.    It had
been used without objection from the owner of the soil.    No
obstructions were placed in the way of its use.    Wheeler
made no objections, and Wheeler was the owner of the soil
over which it passed.    The record shows that Wheeler not
only consented to its use, but fenced it, so that it might be
used exclusively as a lane, and for ingress and egress, and
that the fence was kept up, some repairs made by Wheeler
and some by the defendant, after it was erected.    The pre-
ponderance of the evidence shows that this way was in good
condition for travel, and that defendant could reach the

public highway, on the east of his south 80, by means of this lane, by crossing his own land.

It may be argued, however, that the right to use this lane was a permissive right only, and was not a vested right. Before this action was commenced, however, Wheeler, at the instance of the plaintiff, tendered to defendants—in fact, delivered into their possession—a good and sufficient warranty deed, conveying to them an absolute title to the land covered by this lane. The defendants, though seeming to desire a permanent outlet from their north land, contumaciously refused to accept it, and insisted that they would accept no other way except that which was obtained through the condemnation proceedings, and which was proposed by them to be opened under such proceedings. When condemnation proceedings, under the statute, are contemplated by a party who claims to have neither a public nor a private way to his land, it would seem, from a reading of the statute, that the thought is implied there that there must first be some attempt to procure a right of way of ingress and egress which will be fair and just to both parties, and a refusal. The Wheelers had given the use of this strip, its use had been accepted, and it had been continuously used for the purpose of ingress and egress, for more than 11 years. It was a reasonably sufficient way for ingress and egress. The only objection that could reasonably be urged to it is that it was permissive only. However, before the proceedings were commenced, its permissive character was destroyed, and an absolute right tendered. The fact that a right of way sufficient for ingress and egress was tendered, absolutely and unequivocally, to the use of the party desiring ingress and egress, when it affords him a reasonably sufficient way for ingress and egress, negatives the idea that he may proceed under the statute to condemn a public way.

The thought herein expressed is suggested in what was said by Justice Sherwin in the opinion filed in *Carter v. Barkley,* 137 Iowa 510, 514. What was said by Justice Sherwin there was upon the point urged: that the plaintiffs had a right of way. The evidence disclosed that they did not

have an absolute right to use the right of way, against the objection of the owner of the land over which the right of way passed. The court said:

"Unless a party has a way, either public or private, which is unobstructed and unquestioned, he may institute proceedings under the statute. If the defendants herein had said to the plaintiffs, 'You have a way from your land north, and we do not question your right to use it without the obstruction of gates,' a different question would be presented."

The defendant is not entitled to more than one way of ingress and egress. In *Fisher v. Maple Blk. Coal Co.*, 171 Iowa 486, 491, this court said:

"It is true that, when the condemnor comes within the statutory conditions, he may take his choice, as between a highway and a railway connection. But he can have only the one 'way.' No limitation is put upon his use of such way as he acquires. He may use it as a wagonway or railway, and probably both. But, having acquired the one or the other, he may not again condemn for outlet purposes; and it matters not, under the statute, whether he has acquired his previous outlet by condemnation or by private contract."

It is the general holding of the courts that statutes conferring the power of eminent domain are to be strictly construed in favor of the private owner. *Rensselaer & S. R. Co. v. Davis*, 43 N. Y. 137; *Bishop v. North Adams Fire Dist.*, 167 Mass. 364 (45 N. E. 925); *City of East St. Louis v. St. John*, 47 Ill. 463; *Chicago & E. I. R. Co. v. Wiltse*, 116 Ill. 449; *Ligare v. City of Chicago*, 139 Ill. 46 (28 N. E. 934); *McElroy v. Kansas City*, (Mo.) 21 Fed. 257.

We might stop the consideration of the case here; but a further fact appears in the record. That is, that the plaintiff, on the trial of the case, tendered to the defendants an absolute right of way from their north land to the public highway, which they seek to reach by condemnation, to and over one of the public streets of the town of Strawberry Point. This road so tendered affords a fair and reasonable ingress and egress from the north line of defendants' 40 to the highway leading into Commercial Street, on the east

of plaintiff's fairgrounds. It appears further in this record —though not a controlling thought—that to permit defendants to open this road where they propose to open it, through condemnation proceedings, would cause irreparable injury to the plaintiff's premises and the business carried on there.

The law and equity are both with plaintiff upon the basic right in controversy.

It is contended, however, that the court erred in permitting plaintiff to file an amendment, tendering a deed over land leading to the public streets of Strawberry Point; but this we need not consider. Jt in no way prejudiced any of the rights of the defendant° determinative of this controversy.

Upon the whole record, we find that the defendants are not within the protection of the statute in their effort to condemn a public way over plaintiff's land; that they have a private way such as, under the statute, negatives their right to condemn a public way over the land of their neighbor. Upon the whole record, we think the judgment of the court was right, and it is—*Affirmed.*

WEAVER, C. J., LADD and STEVENS, JJ., concur.